UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
ZURAB KAKUSHADZE, A# 78-704-408,

              Plaintiff,

   -against-                                        07 Civ. 8338 (DCF)

MICHAEL CHERTOFF, Secretary of the        ECF Case
Department of Homeland Security, and
ROBERT MUELLER, Director, Federal Bureau
of Investigation,

              Defendants.

------------------------------------------------------------ x

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS

                                  MICHAEL J. GARCIA
                                  United States Attorney for the
                                  Southern District of New York
                                  Attorney for Defendants
                                  86 Chambers Street
                                  New York, New York 10007
                                  Telephone: (212) 637-2726
                                  Facsimile: (212) 637-2717

DANIEL P. FILOR
Assistant United States Attorney
— Of Counsel —

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................. 1

BACKGROUND .............................................................. 2

ARGUMENT ................................................................. 4

    I.    Plaintiff's Claim Against the DHS Should Be Dismissed
        for Lack of Subject Matter Jurisdiction ............................ 4

        A.    Mandamus Does Not Provide Jurisdiction Over
              Plaintiff's Claim Against the DHS ............................ 5

        B.    The APA Does Not Provide Jurisdiction Against the DHS ............ 9

    II.   Plaintiff's Claim Against the FBI Should Be Dismissed
        for Lack of Subject Matter Jurisdiction ............................ 10

CONCLUSION ............................................................... 13

Defendants Michael Chertoff, Secretary of the Department of Homeland Security (the "DHS") and Robert Mueller, Director of the Federal Bureau of Investigation (the "FBI") (collectively, the "Government"), by and through their attorney, Michael J. Garcia, United States Attorney for the Southern District of New York, respectfully submit this memorandum in support of their motion to dismiss the complaint, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rule 12(b)(1)").

## PRELIMINARY STATEMENT

Plaintiff Zurab Kakushadze ("plaintiff" or "Mr. Kakushadze") commenced this action against the DHS and FBI seeking to require the Government to adjudicate and grant plaintiff's pending application for naturalization (the "N-400 application"). Plaintiff alleges that the Government has failed to perform its duties and has taken an unreasonable amount of time to adjudicate his N-400 application.

Plaintiff's complaint against the Government should be dismissed under Rule 12(b)(1) because the Court lacks subject matter jurisdiction over plaintiff's claims against the DHS and FBI. Neither the DHS nor the FBI owes a duty to adjudicate plaintiff's N-400 application under the present circumstances. The DHS is the designated agency with the authority to adjudicate applications for naturalization, but it is prevented by federal regulation from granting naturalization before the FBI has conducted a background check of an applicant. Here, the DHS has requested the FBI to conduct a background check regarding plaintiff, but the FBI has not yet been able to complete it, and accordingly, the DHS is precluded from granting plaintiff's requested relief.

The FBI has begun conducting the background check regarding plaintiff that was requested by the DHS. However, the FBI conducts millions of background checks each year.

As a result of the enormous volume of background checks that the FBI must conduct, and the time required to conduct each, it is not unreasonable that the FBI is continuing to process plaintiff's background check. There is no statutory requirement for the FBI to complete a background check regarding an applicant for naturalization in a specific amount of time. Thus, the FBI owes no duty to plaintiff that it has failed to perform, and no jurisdiction exists to require the FBI to perform any action.

Accordingly, the Government's motion to dismiss should be granted on behalf of the DHS and the FBI.

## BACKGROUND

Plaintiff commenced this action against the DHS and FBI, alleging that they have unreasonably failed to perform their duties and have taken an unreasonable amount of time to adjudicate plaintiff's N-400 application for naturalization. *See* Complaint for a Writ in the Nature of a Mandamus ("Compl.") ¶¶ 20, 21. Plaintiff applied for naturalization in September 2006 but has not yet been scheduled for a naturalization interview because his background check by the FBI has not been completed. *See* Compl. Exh. E; Declaration of Heidi Bijolle, dated January 3, 2008 ("Bijolle Decl.") ¶¶ 5, 6, 14, 16; Declaration of Michael A. Cannon, dated December 10, 2007 ("Cannon Decl.") ¶ 41.

Since the terrorist attacks of September 11, 2001, the need to conduct more rigorous and thorough background checks on aliens who are seeking immigration status in the United States has required procedures that sometimes result in increased waiting times for adjudications by the DHS.[1] *See* Bijolle Decl. ¶ 4. The public safety requires the DHS to make certain that

---

[1] The United States Citizenship and Immigration Services ("CIS") is the division within the DHS that adjudicates N-400 applications. Because plaintiff has named the Director of the DHS as a defendant, this memorandum will refer to the DHS and the CIS interchangeably as the DHS.

2

background checks have been performed before N-400 applications are adjudicated. *See id.* In accordance with 8 C.F.R. § 335.2(b), in the absence of a "definitive response" from the FBI with regard to a background check requested by the DHS, an applicant may not be scheduled for a naturalization interview on an N-400 application. *See id.* at ¶ 5. The FBI conducts millions of background checks each year. *See* Cannon Decl. ¶ 21. For example, during fiscal year 2006, the FBI processed in excess of 3.4 million background checks, and approximately 45% of them (*i.e.*, approximately 1.6 million) were submitted by the DHS. *See id.* at ¶¶ 21-22. The FBI generally works on the oldest background checks first, using a "first-in, first-served protocol," which reflects that all applicants are equally deserving and ensures that all applicants are treated fairly. *See id.* at ¶ 18. An exception to the FBI's first-in, first-served policy exists when the DHS directs that a background check be handled on an "expedited" basis. *See id.* at ¶ 19. The DHS has issued specific guidelines regarding the circumstances under which an "expedited" background check should be requested from the FBI, such as for military deployments. *See* Bijolle Decl. ¶ 13.

Plaintiff was granted lawful permanent residence on December 3, 2001. *See* Compl. ¶ 10. On or about September 6, 2006, plaintiff filed his N-400 application for naturalization with the DHS. *See* Compl. ¶ 11. On September 18, 2006, the DHS submitted to the FBI a request for a background security name check regarding plaintiff. *See* Bijolle Decl. ¶ 6.

The background check regarding plaintiff was received by the FBI on or about September 21, 2006. *See* Cannon Decl. ¶ 41. On the same date, the FBI initially electronically checked plaintiff's name against the FBI's Universal Index, which yielded "hits" indicating possible matches with FBI records residing in FBI Headquarters and/or various field offices. *See id.* On or about October 18, 2006, the FBI conducted a secondary, manual search on plaintiff's name,

3

which indicated that plaintiff's name still appeared to be associated with FBI records. *See id.* On or about October 25, 2007, the FBI initiated a preliminary manual file review to locate paper files and to determine whether those files are germane to plaintiff's name. *See id.* The FBI is continuing to process the background check regarding plaintiff. *See id.*; Bijolle Decl. ¶ 6.

In order to ensure that plaintiff's N-400 application is scheduled for a naturalization interview at the earliest possible time, the DHS continues to periodically monitor for a response from the FBI regarding the background check regarding plaintiff. *See* Bijolle Decl. ¶ 16. While plaintiff's N-400 application remains pending, plaintiff retains all of the rights and benefits of a lawful permanent resident, including the right to live and work in the United States and to travel freely abroad. *See id.* at ¶ 16.

## ARGUMENT

### I. PLAINTIFF'S CLAIM AGAINST THE DHS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

This Court should dismiss the action against the DHS under Rule 12(b)(1) for lack of subject matter jurisdiction. Plaintiff alleges that jurisdiction over his claims is provided by the mandamus statute, 28 U.S.C. § 1361, or by the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (the "APA"). *See* Compl. ¶ 2.[2] Neither basis, however, is tenable.

---

[2] Plaintiff also cites the general federal question statute; however, "the federal question statute, 28 U.S.C. § 1331, standing alone, ... does not confer subject matter jurisdiction, because the statute only provides for jurisdiction in district courts over claims that themselves 'arise under' some other relevant federal Constitutional or statutory provision." *See Karan v. McElroy*, No. 02 Civ. 6678, 2003 WL 21209769, at *2 (S.D.N.Y. May 23, 2003); *see also Alkeylani v. Dept. of Homeland Security*, 514 F. Supp. 2d 258, 264 (D. Conn. 2007) (federal question statute, *together with APA*, in some cases can provide jurisdiction). Plaintiff also cites 8 U.S.C. § 1329 of the Immigration and Nationality Act of 1952 ("INA") as the basis for jurisdiction. *See* Compl. ¶ 2. The cited section, 8 U.S.C. § 1329, is inapplicable because it only relates to cases "brought by the United States." *See* 8 U.S.C. § 1329. Moreover, the only section of the INA that could arguably provide jurisdiction to a plaintiff concerning delay in the adjudication of an application for naturalization is 8 U.S.C. § 1447, but this provision is only triggered if an adjudication is not

4

"'A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the [court] lacks the statutory or constitutional power to adjudicate it.'" *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). A plaintiff bears the burden of establishing the court's jurisdiction by a preponderance of the evidence. *See Luckett*, 290 F.3d at 496-97. To resolve a Rule 12(b)(1) motion, the court must accept all factual allegations in the complaint as true, but should not draw inferences favorable to the party asserting jurisdiction, and may consider materials beyond the pleadings to resolve the issue of jurisdiction. *See Maloney v. Cuomo*, 470 F. Supp. 2d 205, 210 (E.D.N.Y. 2007).

### A. Mandamus Does Not Provide Jurisdiction Over Plaintiff's Claim Against the DHS

Mandamus jurisdiction, codified at 28 U.S.C. § 1361, grants the Court "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Mandamus is an "extraordinary writ" that must be exercised cautiously. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 18 (1983); *Aguinda v. Texaco*, 241 F.3d 194, 200 (2d Cir. 2001). The Second Circuit has instructed that to merit mandamus relief, a party "must show that

---

completed within 120 days after an "examination is conducted." *See* 8 U.S.C. § 1447(b); *see also Omar v. Mueller*, 501 F. Supp. 2d 636, 640-41 (D.N.J. 2007) (citing *Baez-Fernandez v. I.N.S.*, 385 F. Supp. 2d 292, 294 (S.D.N.Y. 2005)). Several judges in this District have construed the term "examination" to mean the interview of the applicant by a District Adjudication Officer. *See Al-Farisi v. Mueller*, 492 F. Supp. 2d 335, 336-37 (S.D.N.Y. 2007) (finding jurisdiction under 8 U.S.C. § 1447(b) where CIS failed to adjudicate naturalization application within 120 days of "examination", *i.e.*, initial interview of applicant, but explaining that if requirements of § 1447(b) had not been satisfied, "there would be no subject matter jurisdiction"); *Mostovoi v. Secretary of Dep't of Homeland Security*, No. 06 Civ. 6388, 2007 WL 1610209, at *3 (June 4, 2007) ("examination" underlying § 1447(b) jurisdiction is discrete event of initial applicant interview); *Alhamedi v. Gonzales*, No. 07 Civ. 2541, 2007 WL 1573935, at *3 (S.D.N.Y. May 30, 2007) (finding jurisdiction under § 1447(b) where DHS failed to adjudicate naturalization application within 120 days of initial interview of applicant).

5

he or she lacks an adequate alternative means to obtain the relief sought, and must demonstrate a clear and indisputable right to the issuance of the writ." *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 233-34 (2d Cir. 1993) (citations omitted). Indeed, the "extraordinary remedy of mandamus under 28 U.S.C. § 1361 will issue only to compel the performance of a 'clear nondiscretionary duty.'" *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)).

Plaintiff's complaint fails to identify any "clear nondiscretionary duty" that the DHS owes to plaintiff that would serve as a basis for this Court to exercise mandamus jurisdiction to compel the DHS to act. Plaintiff alleges that the DHS has taken "an unreasonable amount of time to adjudicate" plaintiff's N-400 application. *See* Compl. ¶ 20. Therefore, jurisdiction over plaintiff's claim against the DHS could exist only if the DHS owes a clear duty to adjudicate his N-400 application in less time than it has been pending. This claim, however, must be rejected because (1) there is no duty to adjudicate plaintiff's N-400 application in a specific amount of time, and (2) the DHS is precluded by federal regulation from adjudicating plaintiff's N-400 application at the current time.

The DHS's duties with regard to the adjudication of naturalization applications is provided by federal statute and regulation. It is well settled that a person seeking to acquire rights as a citizen "can rightfully obtain them only upon terms and conditions specified by Congress." *I.N.S. v. Pangilinan*, 486 U.S. 875, 884 (1988) (quoting *United States v. Ginsberg*, 243 U.S. 472, 474 (1917)). Congress enacted 8 U.S.C. § 1446 to govern the procedure for granting naturalization. The statute requires that "[b]efore a person may be naturalized," the Government "shall conduct a personal investigation" of the applicant, and the statute details the

conduct of the examination. *See* 8 U.S.C. § 1446(a). Federal regulations provide further detail governing the process of adjudicating naturalization applications. *See* 8 C.F.R. §§ 335.1 – 335.3.

Despite the extensive regulation over the adjudication process, there is no requirement that naturalization applications be adjudicated in any specific amount of time beginning at the date of application. The decision to include no time requirement for adjudications based on the date the application was filed was not an oversight. In fact, the INA and federal regulations do provide a timeliness requirement concerning adjudications of naturalization applications, but the trigger is not the date of the application. Instead, the regulations require that a "decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant." *See* 8 C.F.R. § 335.3(a). The INA specifically provides for district court jurisdiction if the Government fails to make its adjudication on an application by the close of the 120-day period following the examination. *See* 8 U.S.C. § 1447(b). Thus, Congress considered whether to enact a timeliness requirement for naturalization adjudications, and chose to trigger it based on the Government's examination of the applicant.

In the present action, it is undisputed that plaintiff has not yet been examined by the DHS concerning his naturalization application. *See* Compl. Exh. E; Bijolle Decl. ¶¶ 5, 6, 14, 16. Accordingly, the 120-day period for granting or denying plaintiff's N-400 application has not yet begun to run. *See, e.g., Baez-Fernandez v. I.N.S.*, 385 F. Supp. 2d 292, 294-95 (S.D.N.Y. 2005) (finding no jurisdiction under the APA where naturalization applicant had not been interviewed by DHS and 8 U.S.C. § 1447(b)'s "120-day period begins to accrue only after examination").

In addition to not requiring the DHS to adjudicate plaintiff's N-400 application at this time, federal regulation actually prevents the DHS from conducting plaintiff's examination at

this time because the FBI has not completed plaintiff's background check. *See* 8 C.F.R. § 335.2(b) ("The Service will notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application *only after* the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed.") (emphasis added). The DHS submitted a request to the FBI to conduct a background check regarding plaintiff, but that background check is still being processed. *See* Bijolle Decl. ¶ 6; Cannon Decl. ¶ 41. Therefore, the DHS is not permitted to grant plaintiff's N-400 application or even to conduct its initial examination. Accordingly, the DHS owes no "clear nondiscretionary duty" to adjudicate plaintiff's N-400 application at this time.

Courts in this District have not been confronted with the type of allegations plaintiff alleges in the present case. *Cf. Zaytev v. Gantner*, No. 04 Civ. 7101, 2004 WL 2251665 (S.D.N.Y. Sept. 24, 2004) (denying mandamus on plaintiffs' visa applications because, even if CIS has a duty to adjudicate applications within a reasonable time, it is not required to make any determinations until the requisite FBI security checks have been completed). Several district courts in other districts have dismissed complaints like that brought by plaintiff, holding that mandamus jurisdiction is lacking because there is no "clear nondiscretionary duty" to adjudicate a naturalization application while the FBI background check is pending, *see Ibrahim v. Chertoff*, No.5:07-CV-141, slip op. at 5 (E.D.N.C. Dec. 28, 2007); *Sinha v. Upchurch*, No. 07 CV 2274, 2007 WL 4322225, at *4 (N.D. Ohio Dec. 7, 2007); *Omar v. Mueller*, 501 F. Supp. 2d 636, 639-40 (D.N.J. 2007); *Dairi v. Chertoff*, No.07cv1014, 2007 WL 3232503, at *1-2 (S.D. Cal. Nov. 1,

2007); *Yan v. Mueller*, No. H-07-0313, 2007 WL 1521732, at *6-*8 (S.D. Tex. May 24, 2007); *Badier v. Gonzales*, 475 F. Supp. 2d 1294, 1298-99 (N.D. Ga. 2006).[3]

### B. The APA Does Not Provide Jurisdiction Against the DHS

The same reasoning that renders mandamus jurisdiction inapplicable militates against jurisdiction under the APA. The APA provides for judicial review of agency action in certain limited instances. *See* 5 U.S.C. § 706. Plaintiff alleges that the DHS's failure to adjudicate his pending N-400 application in the fifteen months since plaintiff filed it is actionable under the APA as agency action "unlawfully withheld or unreasonably delayed." *See* Compl. ¶¶ 11, 20, 21 (citing 5 U.S.C. § 706(1)).

---

[3] It bears noting that the case law in this area is far from uniform, and no circuit court has addressed the jurisdictional questions raised here. Contrary to the case law cited above, certain district courts have held that similar claims against CIS and/or the FBI are subject to the court's mandamus or APA jurisdiction, most notably in *Kaplan v. Chertoff*, 481 F. Supp. 2d 370 (E.D. Pa. 2007); *see, e.g., Dawoud v. Dept. of Homeland Security*, No. 06-CV-1730, 2007 WL 4547863 (N.D. Tex. Dec. 26, 2007); *Moretazpour v. Chertoff*, No. 07-4264, 2007 WL 4287363 (N.D. Cal. Dec. 5, 2007). The reasoning of these cases, however, is not persuasive. In *Kaplan*, the district court held that "CIS has a mandatory duty to process applications for . . . naturalization," but recognized that "Congress prohibited CIS from processing such applications until it receives completed background checks from the FBI;" in other words, "CIS does *not* have a mandatory duty to take action on an application for naturalization until the FBI has completed its background checks." 481 F. Supp. 2d at 400-01 (emphasis added). At the very least, this reasoning suggests that subject matter jurisdiction over the CIS does not obtain until the FBI has completed a background check.

Even those courts that have exercised jurisdiction in these cases, have not adopted the reasoning of *Kaplan* without reservation. *See, e.g., Bodomov v. United States*, No. 07-1482, 2007 WL 4373052, at *3 (E.D. Pa. Dec. 14, 2007) (following *Kaplan* in light of absence of circuit precedent to the contrary, but noting that "subject matter is not free from doubt"). Indeed, certain courts that have agreed with *Kaplan* in finding jurisdiction over the CIS have nevertheless rejected *Kaplan*'s holding vis-a-vis the FBI, concluding that the FBI has no "mandatory duty" to process background checks that would give rise to either mandamus or APA jurisdiction. *See Antonishin v. Keisler*, No. 06 CV 2518, 2007 WL 2788841, at *6-7 (N.D. Ill. Sept. 20, 2007); *Eldeeb v. Chertoff*, No. 07 CV 236, 2007 WL 2209231, at *21-22 (M.D. Fla. July 30, 2007).

9

The fact that DHS has not yet adjudicated plaintiff's N-400 application cannot be considered unlawful or unreasonable delay under the APA. In reviewing the applicable section of the APA, the United States Supreme Court has held that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take.*" *Norton v. So. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original). As *Norton* explained, "[t]he limitation to *required* agency action rules out judicial direction or even discrete agency action that is not demanded by law." *Id.* at 65 (emphasis in original). As described above, the DHS is not required to process plaintiff's N-400 application or conduct his initial examination within a specific time period. Indeed, federal regulations *prohibit* the DHS from conducting the required examination before the FBI background check is complete. Thus, plaintiff fails to allege any "required agency action" by the DHS that could support APA jurisdiction. *See Norton*, 542 U.S. at 65; *Ibrahim*, No.5:07-CV-141, slip op. at 6; *Sinha v. Upchurch*, 2007 WL 4322225, at *4; *Omar*, 501 F. Supp. 2d at 540; *Dairi*, 2007 WL 3232503, at *1-2; *Baez-Fernandez v. I.N.S.*, 385 F. Supp. 2d 292, 294-95 (S.D.N.Y. 2005).

## II. PLAINTIFF'S CLAIM AGAINST THE FBI SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

Plaintiff essentially alleges that the FBI has taken an unreasonable amount of time to process the background check on plaintiff that was requested by the DHS. The complaint against the FBI should be dismissed, however, because the Court lacks subject matter jurisdiction over the claim. Neither the mandamus statute nor the APA affords this Court jurisdiction here because the FBI owes no "clear nondiscretionary duty" to complete the background check regarding plaintiff in less time than it has taken.

There is no regulation governing how thoroughly or quickly the FBI conducts its background check for applicants seeking naturalization. *See Ibrahim*, No.5:07-CV-141, slip op.

10

at 5; *Sinha v. Upchurch*, 2007 WL 4322225, at *5; *Omar*, 501 F. Supp. 2d at 640; *Dairi*, 2007 WL 3232503, at *1-2; *Yan*, 2007 WL 1521732, at *7-8. Plaintiff seeks to impose a requirement that the FBI conduct its background check in what plaintiff deems to be a "reasonable amount of time," alleging that the amount of time that the FBI has spent on plaintiff's background check already is "unreasonable." *See* Compl. ¶ 20. Plaintiff does not, however, allege what amount of time would be reasonable, or why the amount of time that the FBI has spent on plaintiff's background check is unreasonable. Accordingly, because plaintiff cannot establish that the time taken by the FBI in completing his background check constitutes a violation of a clearly established duty or unreasonable or unlawful withholding of agency action, this Court lacks subject matter jurisdiction over plaintiff's claims against the FBI.[4]

Nor, for that matter, could plaintiff establish that the FBI has acted unreasonably, particularly when taking into account the many applicants who are ahead of plaintiff in the processing queue and the steps the FBI has already taken with regard to plaintiff. The FBI processes millions of background checks every year, and uses a "first-in, first-served protocol" in deciding when to work on each applicant's background check. *See* Cannon Decl. ¶¶ 18, 21, 22. Plaintiff's allegation that the FBI should have worked faster on plaintiff's background check is baseless. The FBI initially electronically checked plaintiff's name against the FBI's Universal Index on or about September 21, 2006, within a few days of the DHS submitting its request for a background check to the FBI, and only two weeks after plaintiff filed his N-400 application with the DHS. *See* Cannon Decl. ¶ 41; Bijolle Decl. ¶ 6; Compl. ¶ 11. The FBI's initial electronic

---

[4] *See Ibrahim*, No.5:07-CV-141, slip op. at 5; *Sinha v. Upchurch*, 2007 WL 4322225, at *5; *Omar*, 501 F. Supp. 2d at 640; *Dairi*, 2007 WL 3232503, at *1-2; *Yan*, 2007 WL 1521732, at *7-*8; *cf. Eldeeb v. Chertoff*, No. 8:07-cv-236, 2007 WL 2209231, at *23 (M.D. Fla. July 30, 2007) (finding lack of subject matter jurisdiction under mandamus or APA "with respect to the pace at which the FBI processes a Name Check for CIS" for adjustment of status applicant).

check yielded "hits" indicating possible matches with FBI records residing in FBI Headquarters and/or various field offices. *See* Cannon Decl. ¶ 41. Less than a month later, the FBI conducted a secondary, manual search on plaintiff's name, which indicated that plaintiff's name still appeared to be associated with FBI records. *See id.* And on or about October 25, 2007, because of the database "hits" on plaintiff's name, the FBI was required to initiate a manual file review to locate paper files and to determine whether files are germane to plaintiff's name. *See id.* The FBI is continuing to process the background check regarding plaintiff. *See id.*; Bijolle Decl. ¶ 6. In the interest of the public safety, the FBI's background check has been and will continue to be thorough, but there is no basis to find that it has taken an "unreasonable" amount of time.

Here, plaintiff's N-400 application has been pending and the FBI has been actively processing plaintiff's background check for less than sixteen months. *See* Compl. ¶ 11; Bijolle Decl. ¶ 6; Cannon ¶ 41. As other courts have held, this length of time is not unreasonable. *See Vorontsova v. Chertoff*, No. 07-10426, 2007 WL 3238026, at *3 (finding twenty-one months not unreasonable and granting motion to dismiss for lack of APA or mandamus jurisdiction concerning adjustment of status application where "the FBI processed 3.4 million name checks in fiscal year 2006 alone"); *Morgovsky v. Department of Homeland Security*, 517 F. Supp. 2d 581, 585 (D. Mass. 2007) (finding sixteen months not unreasonable because "delay in processing [plaintiff's] background check is attributable to neither agency malfeasance nor inaction, but to an enormous flood of applications that have slowed the bureaucratic process and led to a backlog in the completion of the required background checks").[5]

---

[5] Courts have divided concerning whether much longer delays in processing background checks by the FBI are unreasonable. *Compare Takkallapalli v. Chertoff*, 487 F. Supp. 2d 1094, 1098-99 (W.D. Mo. 2007) (finding three-year delay in processing FBI background check not to be unreasonable and denying mandamus regarding plaintiff's application for adjustment of status);

Indeed, there are substantial policy reasons that also militate against granting the request for judicial review by a naturalization applicant on the ground that he wants his background check to be processed more quickly. As one court has explained: "granting review of the petitioner's claims would only serve to further divert agency attention and stretch scarce resources away from the adjudication of naturalization applications by encouraging other applicants to file suit to receive expedited treatment rather than wait their turn in line." *Yan*, 2007 WL 1521732, at *7 (citing *Manzoor v. Chertoff*, 472 F. Supp. 2d 801, 809 (E.D. Va. 2007) (declining to grant relief in a case involving a delayed name check to avoid providing "an incentive for naturalization applicants to file civil actions in an effort to . . . 'jump to the front of the line' "); *Qui v. Chertoff*, 486 F. Supp. 2d 412, 2007 WL 1430207, *6 (D.N.J. 2007) (declining to grant review where doing so "would do nothing more than shuffle to the front of the line those . . . applicants canny enough to file a complaint in federal court")).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss in its entirety.

Dated: New York, New York
      January 3, 2008

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for Defendants

By:  /s/ Daniel P. Filor
DANIEL P. FILOR
Assistant United States Attorney

---

with *Alkeylani v. Department of Homeland Security*, 514 F. Supp. 2d 258, 266 (D. Conn. 2007) (finding delay of more than three years to be unreasonable).