## PRELIMINARY STATEMENT

Comes now the Plaintiff, ("Plaintiff or "Mr. Zurab Kakushadze"), by and through his attorneys, the Law Office of Jan H. Brown, PC and pleads as follows:

The Defendants' Motion to Dismiss should be denied and the Plaintiff's Compliant in the Nature of Mandamus upheld. The Defendants assert that the mandamus claim should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rule 12(b)(1)"), but they do not raise any substantial jurisdictional claims. The Plaintiff respectfully requests that the Court assume jurisdiction of this case and compel the Defendants and those acting under them to perform their duty to adjudicate the Plaintiff's pending N-400 application.

## HISTORY OF THE CASE

Mr. Kakushadze is a native and citizen of the Republic of Georgia, and a lawful permanent resident of the U.S. since December 3, 2001 under file A078 704 408. The Plaintiff resides in the United States in New York, New York, county of New York.

Mr. Kakushadze was granted permanent residence on December 3, 2001 (Exhibit A, copy of Permanent Resident Card). The Plaintiff filed an application for naturalization ("N-400") within 90 days of completion of his five-year residency requirement. The N-400 was received by USCIS on September 6, 2006(Exhibit B, Receipt). The Plaintiff was fingerprinted on September 25, 2006 (Exhibit C).

Mr. Kakushadze is a law-abiding citizen with a PhD from Cornell University. He works as Managing Director at WordQuant, LLC in the finance industry, regulated by the Securities and Exchange Commission. Thus, he is fingerprinted regularly for security purposes and expects no issue with his FBI background check (Exhibit D: Resume and Exhibit E: Letter).

During a phone inquiry concerning the delay in the processing of his case, Mr. Kakushadze was led to believe that the FBI had already performed a background check, but it has not been transferred to U.S. Citizenship and Immigration Services ("USCIS") (Exhibit E).  This case is now overdue.  Please see Exhibit F, a recent report from the USCIS website stating that N-400's take 7 months to process at the New York City office.  This case was submitted on September 6, 2006, approximately 17 months ago.

## ARGUMENT

I.   **The Defendants have not proposed any substantial jurisdictional issues in their Motion to Dismiss, which should therefore be denied.**

The Supreme Court has distinguished between jurisdiction – which is the court's power to hear the case – and the sufficiency of a valid cause of action.  *See, e.g., Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1988); *see also Ahmed v. DHS,* 328 F.3d 383, 386-87 (7th Cir. 2003) (distinguishes between the court's power to adjudicate the case, which is jurisdictional, and the court's power to grant relief, which is not jurisdictional). The failure to state a valid cause of action calls for a judgment on the merits and not for dismissal for want of jurisdiction. *Bell v. Hood,* 327 U.S. 678, 682 (1946).  The Supreme Court has made clear that: 'jurisdiction … is not defeated … by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.' Rather, the district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the [ ] laws of the United States are given one construction and will be defeated if they are given another …' *Steel Co. v. Citizens for a Better Environment,* 523 U.S. at 89 (quoting *Bell,* 327 U.S. at 682,

685). Thus, one court has held that in resolving whether mandamus jurisdiction is present in an immigration case, the allegations of the complaint are taken as true (unless patently frivolous) to avoid "tackling the merits under the ruse of assessing jurisdiction." *Ahmed,* 328 F.3d at 386-387.

Applying these principles, the Seventh Circuit held in *Ahmed* that the question of whether a statute imposed a "duty" on the government for purposes of mandamus relief was not a jurisdictional question. As the court explained:

> [T]he district court has jurisdiction under *§ 1361* [the mandamus statute] to determine whether the prerequisites for mandamus relief have been satisfied: does the plaintiff have a clear right to the relief sought; does the defendant have a duty to perform the act in question; and is there no other adequate remedy available…A conclusion that any one of those prerequisites is missing should lead the district court to deny the petition, not [for lack of jurisdiction], but because the plaintiff has not demonstrated an entitlement to this form of extraordinary relief. *Ahmed,* 328 F.3d at 386-87.

The Defendants claim in their Memorandum of Law in Support of Defendants' Motion to Dismiss ("Memo") that this Court lacks subject matter jurisdiction because USCIS has "no duty to adjudicate plaintiff's N-400 application in a specific amount of time" (Memo, pg. 6 ¶ 2). A jurisdictional question such as this cannot lead to dismissal under Rule 12(b)(1).

A similar motion to dismiss was denied in *Kaplan v. Chertoff,* No. 06-5304, 2007 U.S. Dist. LEXIS 22935, *71-72 (E.D. Pa. Mar. 29, 2007). In this seminal case, the court acknowledged the Administrative Procedure Act ("APA") claim against USCIS and the FBI over delays in processing adjustment and naturalization applications, and ruled that, "[US]CIS has a mandatory duty to process applications for…naturalization" (*Kaplan,*

481 F.Supp 2d at 400). This ruling has prompted many district courts to find subject matter jurisdiction to rule on Mandamus and APA claims against USCIS and/or the FBI. *Dawoud v. Dept. of Homeland Security*, No. 06-CV-1730, 2007 WL 4547863 (N.D. Tex. Dec. 26, 2007); *Moretazpour v. Chertoff*, No. 07-4264, 2007 WL 4287363 (N.D. Ca. Dec. 5, 2007). In *Bodomov v. United States,* No. 07-1482, 2007 WL 4373052, the court followed *Kaplan,* in the absence of district court precedent to the contrary, which also does not exist in the instant case.[1]

Courts have repeatedly found subject matter jurisdiction in mandamus cases brought due to processing delays in I-485 or other applications, finding that USCIS and the FBI are obliged to process cases in a timely manner. Although distinguishable in part because it addresses applications other than N-400 applications, there is nonetheless substantial case law that has set a standard wherein district courts have found subject matter jurisdiction when cases have been unreasonably delayed, and so have compelled USCIS and the FBI to adjudicate applications within as little as thirty (30) days.[2]

---

[1] The government has submitted the ruling in *Ibrahim v. Chertoff,* No. 5:07-CV-141, slip op. (E.D.N.C. Dec 28, 2007). The court in *Ibrahim* did not find subject matter jurisdiction over the mandamus and APA claims of an LPR seeking to compel USCIS and the FBI to adjudicate his N-400 when they blamed their inaction on a stalled name check. However, the court in *Ibrahim* did not consider that the "name check" procedure is not specifically ordered by law (*see* § II, below), or that the FBI drastically altered its "name check" procedure in an arbitrary fashion in November 2002 without a congressional mandate, and long after 8 C.F.R. § 335.2(b) came into existence (*see also* §s II, IV, VII, VIII, and IX, below).

[2] *See Aslam .v Mukasay,* 2008 WL 220708 (E.D. Va. Jan. 25, 2008); *Saleem v. Keisler*, No. 06-712, 2007 U.S. Dist. LEXIS 80044 (W.D. Wis. October 26, 2007); *Han Cao v. Upchurch*, No. 07-1232, 2007 U.S. Dist. LEXIS 51477 (E.D. Pa. July 16, 2007); *Hoyoung Song v. Klapakas*, No. 06-05589, 2007 U.S. Dist. LEXIS 27203 (E.D. Pa. April 12, 2007); *Li Duan v. Zamberry*, No. 06-1351, 2007 U.S. Dist. LEXIS 12697 (W.D. Pa. 2007); *Xu v. Chertoff*, No. 07-366, 2007 U.S. Dist. LEXIS 50027 (D.N.J. July 11, 2007); *Pool v. Gonzales*, No. 07-258, 2007 U.S. Dist. LEXIS 39946 (D.N.J. June 1, 2007); *Li v. Chertoff*, No. 07-50, 2007 U.S. Dist. LEXIS 53309 (D. Neb. June 19, 2007); *Haidari v. Frazier*, No. 06-3215, 2006 U.S. Dist. LEXIS 89177 (D. Minn. 2006); *Tang v. Chertoff*, No. 07-10231, 2007 U.S. Dist. LEXIS 46030 (D. Mass. June 26, 2007); *Guangming Liu v. Chertoff*, No. 06-3297, 2007 U.S. Dist. LEXIS 29640 (C.D. Ill. April 23,

In *Mocanu, et al. v. Mueller, et al.* (E.D. PA 2/8/08) (attached as Exhibit A), the court dismissed USCIS and FBI's Motion to Dismiss two civil cases brought against the government for unnecessary processing delays. Both underlying naturalization applications, that of Tongxioa Zhang (C.A. No. 07-2718) and Andrew O. Newton (C.A. No. 07-2859), had been repeatedly delayed by USCIS, who only cited delays in the FBI name check as an explanation (see Exhibit A, pg. 4, ¶s D and E; pg. 36, Order 2). In those cases where a naturalization interview has not been conducted, the U.S. District Court for the Eastern District of Pennsylvania ("EDP court") ruled that "USCIS is enjoined…from using the FBI name check program as a factor in the decision making as to these Plaintiffs, unless within thirty (30) days, USCIS has initiated a notice and comment procedure, pursuant to the APA, concerning its use of the FBI name check procedure" (Exhibit A, pg. 37, Order 7).

**II.    There is no law or mandate, congressional or otherwise, that calls for the completion of a "name check" before a naturalization application can be completed.**

In its Memo, the government heavily relied on 8 C.F.R. § 335.2(b) to defend its inaction, which reads:

---

2007); *Tjin-A-Tam v. United States Dep't of Homeland Sec.*, No. 05-23339, 2007 U.S. Dist. LEXIS 17994 (S.D. Fla. 2007); *Cacace v. Swacina*, No. 07-20410, Order on Mot. to Dismiss (S.D. Fla. May 17, 2007); *Jones v. Gonzales*, No. 07-20334, 2007 U.S. Dist. LEXIS 45012 (S.D. Fla. June 21, 2007); *Liu v. Novak*, No. 07-263, 2007 U.S. Dist. LEXIS 63683 (D.C. August 30, 2007); *Salehian v. Novak*, No. 06-459, 2006 U.S. Dist. LEXIS 77028, (D. Conn. 2006); *Aboushaban v. Mueller*, No. 06-1280, 2006 U.S. Dist. LEXIS 81076 (N.D. Cal. 2006); *Singh v. Still,* No. 06-2458, 2007 U.S. Dist. LEXIS 16334 (N.D. Cal. 2007); *Quan v. Chertoff*, 06-7881, 2007 U.S. Dist. LEXIS 44081 (N.D. Cal. June 7, 2007); *Okunev v. Chertoff*, No. 07-00417, 2007 U.S. Dist. LEXIS 53161 (N.D. Cal. July 11, 2007).

> The Service will notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application only after the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed.  A definitive response that a full criminal background check on an applicant has been completed includes:
> (1) Confirmation from the Federal Bureau of Investigation that an applicant does not have an administrative or a criminal record;
> (2) Confirmation from the Federal Bureau of Investigation that an applicant has an administrative or a criminal record; or
> (3) Confirmation from the Federal Bureau of Investigation that two properly prepared fingerprint cards (Form FD-258) have been determined unclassifiable for the purpose of conducting a criminal background check and have been rejected.

The Defendants claimed that USCIS is "not permitted to grant plaintiff's N-400 application or even to conduct its initial examination" because the background check is still being processed (Memo, pg. 8, ¶ 1).  The Defendants have submitted the Declaration of Michael A. Cannon ("Cannon"), Section Chief of the National Name Check Program Section ("NNCPS"), explaining that the FBI is waiting for a "name check" to be completed.  Defendants have noted that an applicant seeking the rights of a citizen, "can rightfully obtain them only upon terms and conditions specified by Congress" (Memo, pg. 6, ¶ 3, *quoting I.N.S. v. Pangilinan,* 486 U.S. 875, 884 (1988) (*quoting United States v. Ginsberg,* 243 U.S. 472, 474 (1917)).  8 U.S.C. § 1446 states that the government will conduct a "personal investigation" of applicants.

There is only one other Congressional action that is relevant to 8 C.F.R. § 335.2(b), and that is a 1998 appropriations bill that uses the term "full criminal background check" when discussing what is required before the legacy IRS could complete a naturalization application (Exhibit A, pg. 12, ¶ 3).  However, absolutely no mention of the FBI procedure of a "name check" is mentioned in congressional history,

in 8 C.F.R. § 335.2(b), or anywhere in USCIS's regulations.  Since the name check has existed in some form since the Eisenhower administration (Cannon, pg. 2, ¶ 4), one can assume that if Congress wished for it to be a requirement to naturalization, it would have mentioned it by name in the resulting decades.  It is therefore presumptive to assert that the FBI "name check" is conducted under a congressional mandate.

The defendants in the instant case have used 8 C.F.R. § 335.2(b) to justify their delay in processing, positing that, "the DHS is not permitted to grant plaintiff's N-400 application or even to conduct its initial examination" because no definitive response has been received from the FBI (Memo, pg. 8, ¶ 1).  However, the FBI has not provided a definitive response solely based upon the stalled name check.  8 C.F.R. § 335.2(b) does not refer to the supposed requirement of a completed name check, nor is any correlation necessarily clear.  One can infer that a "name check" is how the FBI concludes that the applicant has no "criminal" or "administrative" record, as mentioned in 8 C.F.R. § 335.2(b)(1) and (2).  It is unclear from 8 C.F.R. § 335.2(b) what "administrative" really means in regards to a person's record, since it is stated without definition.

Mr. Cannon states that in November of 2002, a review was conducted of the former INS's security check procedures (Cannon, pg. 9, ¶'s 23, 24).  Mr. Cannon does not mention who required this review, although he refers to increased security measures after September 11, 2001 in an unspecific manner.  He does not cite Congress or refer to any congressional mandate.  The FBI arbitrarily changed its policy at that time to expand the "name checks" – even those for individuals who pose no security threat, such as previously-cleared legal permanent residents ("LPRs") applying for naturalization (see §'s VIII, IX, and X., below).  This administrative change was not in response to any

congressional mandate or law.  The expansion of the name check program happened

approximately four years after 8 C.F.R. § 335.2(b) became regulation.  Therefore, the

FBI "name check" is not conducted under any "terms and conditions specified by

Congress" under *United States v. Ginsberg, supra,* and so such a defense is moot.

     The EDP court recently ruled that, "in requiring yet another name check in the

naturalization process, USCIS has moved beyond an interpretive rule and its policies

have severe impact on thousands of LPRs and their families" (Exhibit A, pg. 23, ¶ 2).

The actual means of conducting a "name check" is arbitrary and capricious and currently

under severe legal review, as will follow.


**III.**    **USCIS has a duty to adjudicate this case, and allowing it to remain un-adjudicated indefinitely is to fail in that duty.**

     When viewed as a whole, the Immigration and Nationality Act, as amended, 8

U.S.C. S1101 *et. seq,* ("INA") and additional regulations state that Congress imposed a

duty on USCIS to adjudicate all properly filed applications.  Congress intended that

USCIS would charge a fee to cover the cost of naturalization applications ("N-400"), and

USCIS has a mandatory adjudication fee of $675 for each case, which includes a

biometrics fee.  This mandatory fee creates a duty for USCIS to actually decide a

naturalization application.   It is untenable for the government to charge a $675 fee for an

N-400 and then to argue it has no duty to adjudicate a properly filed application.

Other regulations presume that a decision must be made on all applications, underscoring

the intent discussed above. For example, several regulations dictate how certain

applications must be decided. *See* 8 C.F.R. §§103.2(b)(12); 103.2(b)(14); 103.2(b)(8)(i).

Other regulations dictate the sequence of the adjudicatory process. *See, e.g.,* 8 C.F.R. §

103.2(b)(6);103.2(b)(8)(ii)-(iv); 103.3(a)(1); 103.2(b)(16); 245.2(a)(5). Finally, one

regulation specifically imposes a duty on USCIS to make a decision upon the request of

the applicant, even in the absence of all requested evidence.  8 C.F.R. § 103.2(b)(14). It

would make no sense for the government to have imposed on itself a duty to make a

decision where not all evidence is submitted, but no duty where all requested evidence is

submitted.  The limited flexibility in the regulations for processing an application in a

certain time frame does not absolve USCIS of the duty to adjudicate it, because to leave a

case un-adjudicated indefinitely is to fail to perform its duty.  Inaction is the opposite of

action.

In a case such as the instant case, neglect to process in a timely manner is in effect

neglect to perform one's nondiscretionary duty, as many applicants wait with no

explanation while their cases are stalled due to "hits" on an electronic FBI system, as will

follow.  The Defendants do in fact have "a duty to perform the act in question" (*Ahmed,*

*supra.*) – that is, to adjudicate this case in a timely fashion.  Left unchecked, an agency

could leave a case pending indefinitely and so fail to perform its duty at all.  This case has

been pending past a reasonable amount of time, with little to no work being performed on

it during that span of time, as will follow.  By arguing that there is no time limit to

performing their duties, and so no jurisdiction on the matter in this Court, the Defendants

have indeed attacked "the merits under the ruse of assessing jurisdiction" as warned

against in *Ahmed,* 328 F.3d at 386-387.

**IV.    The APA imposes an independent duty on the Defendants to perform their nondiscretionary tasks in a timely fashion, with or without an explicit time frame specified within a specific law.**

The Defendants are incorrect in asserting that the APA does not provide jurisdiction in the instant case.  The APA states that a person who is suffering a legal wrong because of agency action, or who is adversely affected by agency action within the meaning of a relevant statute, is entitled to judicial review. 5 USC § 702.  "Agency action" is defined to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, ***or failure to act***" (emphasis added). 5 USC § 551(13).

Section 555(b) of the APA, 5 U.S.C. § 555(b), requires that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."  Many courts of appeals have held that § 555(b) creates a non-discretionary duty to conclude agency matters. *See, e.g., Friends of the Bow v. Thompson,* 124 F.3d 1210, 1220-21 (10th Cir. 1997); *Litton Microwave Cooking Prods. v. NLRB,* 949 F.2d 249, 253 (8th Cir. 1991); *Estate of French v. FERC*, 603 F.2d 1158 (5th Cir. 1979); and *Silverman v. NLRB,* 543 F.2d 428, 430 (2d Cir. 1976). Moreover, § 555(b) requires that agency matters be resolved within a reasonable time. A violation of this duty is a sufficient basis for mandamus relief.  *See, e.g., Sierra Club v. Thomas,* 828 F.2d 783, 797 (D.C. Cir. 1987).

Furthermore, the APA provides:

. . . With due regard for the convenience and necessity of the parties or their representatives, and **within a reasonable time**, each agency shall proceed to conclude a matter presented to it. 5 U.S.C. § 555 (b). (emphasis added)

Many courts have read the APA to impose a time requirement. *See, Yu v. Brown*, 36 F. Supp. 2d at 928-931; *Kim v. Ashcroft*, 340 F.Supp 2d 384, 391-92 (S.D.N.Y. 2004)(same); *e.g.*, *Valenzuela v. Kehl*, 2006 WL 2474088 (N.D. Tex. August 28, 2006) (Stickney, M.J.) ("Many courts…have held in immigration cases that petitioners and applicants have a clear right to have their…applications…adjudicated within a reasonable time of their filing.") (citing *Alkenani v. Barrows*, 356 F.Supp.2d 652, 656 (N.D. Tex. 2005) (Kaplan, M.J.); *Fraga By and Through Fraga v. Smith*, 607 F. Supp. 517, 521 (D.C. Or.1985); *Paunescu v. I.N.S.*, 76 F. Supp.2d 896, 901 (N.D. Ill. 1999); *Agbemaple v. I.N.S*, No. 97-C-854, 1998 WL 292441 at *2 (N.D. Ill. May 18, 1998) (unpublished)).

Courts have repeatedly reached this same result in APA cases brought in the immigration context. The District Court for the Southern District of New York has previously ruled that mandamus is appropriate if the government has failed within a reasonable amount of time to perform its duties, according to section 555(b) of the APA (*Kim v. Ashcroft,* 340 F. Supp. 2d 384 (S.D.N.Y. 2004). *See, e.g., Toor v. Still,* 2007 U.S. Dist. LEXIS 53173, *4-5 (N.D. Cal. 6 July 10, 2007); *Yu v. Brown,* 36 F. Supp. 2d 922, 928 (D.N.M. 1999); *Xu v. Chertoff,* 2007 U.S. Dist. LEXIS 50027, *7 (D.N.J. July 11, 2007); and *Haidari v. Frazier,* 2006 U.S. Dist. LEXIS 89177, *9-10 (D. Minn. 2006).

The presence of a timeframe within one section of the INA, but its absence in another, does not indicate Congress's intent to bar courts from reviewing the latter. Congress is presumed to know that the APA requires agency action within a reasonable period, and thus does not need to include a specific timeframe in every statute. Finally, courts have held that Congress must be explicit when an agency should not be subject to the APA's reasonableness standard. *See, e.g., Sierra Club,* 828 F.2d at 796-98.

28 U.S.C. § 1331 grants this Court jurisdiction over an APA suit, and provides the Court with a cause of action for unreasonable agency delay. An exception to this APA cause of action is when "agency action is committed to agency discretion by law." U.S.C. § 701(a). As discussed above, the government does not have discretion to refuse to adjudicate an N-400 application. Therefore, this exception does not apply for that reason alone. Moreover, this exception to the APA applies only in "rare" circumstances where discretion is entirely "unfettered" – that is, where a court would have no meaningful standards by which to judge the agency's action. *See, e.g., Lincoln v. Vigil,* 508 U.S. 182, 190 (1993). Both the INA and the regulations provide guidance by which to judge the agency's delay. *See, e.g., M.B. v. Quarantillo*, 301 F.3d 109, 112-113 (3d Cir. 2002) (finding that an agency's regulations could supply the "law to apply" in an APA case).

The Defendants have quoted *Norton v. So. Utah Wilderness Alliance,* 542 U.S. 55, 64 (2004): "a claim under § 706(l) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take.*" These criteria are met. USCIS has a sole legal duty to process N-400 applications, and has accepted a fee to do so. USCIS has failed to perform its legal duty of processing the Plaintiff underlying case, and given the aggressive tone of the Defendants' Motion to Dismiss, it clearly does not intend to perform its duty in the foreseeable future. As is becoming clear, USCIS could delay a case *ad infinitum* without performing its required duty of adjudicating it, should not Mandamus or the APA be applied in the instant case.

USCIS has brought forth the argument that it is not required to schedule an interview before the FBI security check has been completed. This is a procedural course

of action that USCIS has established in a discretionary manner, interpreting 8 C.F.R. § 335.2(b). However, this by no means excuses USCIS from performing the discrete, nondiscretionary, congressionally-mandated duty of adjudicating this case. USCIS has the means of doing so. However, to argue that 8 C.F.R. §335.2(b) prevents USCIS from processing this case is to some degree misleading because it does not prevent USCIS from simply requesting that the FBI perform its duty. By not doing so over the course of nearly 17 months, and by further delaying this case with its Motion to Dismiss, USCIS has attempted discretion in what is in fact a nondiscretionary duty: The timely processing of a naturalization application.

The Defendants argument that, "Courts in this District have not been confronted with the type of allegation plaintiff alleges in the present case" is false (Memo, pg. 8, ¶ 2). The District Court for the Southern District of New York has previously ruled that Mandamus is appropriate if the government has failed within a reasonable amount of time to perform its duties, according to section 555(b) of the APA. *Kim v. Ashcroft,* 340 F. Supp. 2d 384 (S.D.N.Y. 2004).

Because § 555(b) of the APA mandates that an agency act within a reasonable time, courts have held that the underlying statute and regulations do not have to include specific timeframes. *TRAC v. FCC*, 750 F.2d 70 (D.C.Cir. 1984), specifically acknowledges that courts will be called on to assess delay even in the absence of a statutory timeframe. The *TRAC* court lists six factors useful in assessing delay. *See TRAC*, 750 F.2d at 80. The second factor addresses cases in which Congress provided a timetable for agency action in the enabling statute. *Id.* By setting forth a single factor

13

applicable only in cases where the enabling statute does provide a timeframe, the *TRAC* court necessarily contemplates that courts will assess delay even in the absence of timeframes. There are numerous other examples of courts assessing the reasonableness of delay under the APA in the absence of a deadline in the underlying statute. *See, e.g., Kim v. Ashcroft,* 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004), *Forest Guardians v. Babbitt,* 174 F.3d 1178, 1190 10th Cir. 1998); *Sierra Club,* 828 F.2d at 796-98; *Toor,* 2007 U.S. Dist. LEXIS 53173, at 12-13; *Singh v. Still,* 470 F. Supp. 2d 1064, 1072 (N.D. Cal. 2007).

Ignoring the Defendants' duty to adjudicate this case in a timely fashion, as mandated by § 555(b) of the APA, allows for an endless round of passing the blame between USCIS and the FBI, when cases such as the underlying case lie neglected and dormant due to unsubstantiated rumors of a name's existence in the FBI database (see VIII,, below). This is not in the spirit of the law, and Mandamus was created for just such failings in the bureaucratic system.

> **V.  Mandamus is appropriate in the instant case; should the courts cease to grant mandamus in this and similar cases, USCIS and/or the FBI can keep a file open indefinitely, thus failing to perform their nondiscretionary duty without check.**

Mandamus has been invoked because the Plaintiff has a clear and certain claim, the Defendants have a plainly described duty to perform their duties, and there is no other adequate remedy available. *Yu v. Brown,* 36 F.Supp.2d 922, 933-34 (D.N.M.1999).

In *Kim v. Ashcroft,* the District Court for the Southern District of New York ruled that Mandamus was appropriate when the government has failed within a reasonable

amount of time to perform its duties, according to section 555(b) of the APA. Mandamus has also been granted and EAJA fees paid where a petition took an inordinate amount of time to process. *Harriett v. Ashcroft,* 277 f.Supp.2d 538, 542-45 (E.D. Pa. 2003). A similar motion to dismiss has been denied in *Kaplan v. Chertoff,* supra, where an APA claim was found against USCIS and the FBI over delays in processing adjustment and naturalization applications.

The Plaintiff agrees that there is no established time limit for USCIS and the FBI to adjudicate his case besides that rendered by common sense. This being the case, the Defendants can draw out the processing of this or any case, without any check or balance other than Mandamus, and consequently never perform their duty at all. Other courts have ruled to prevent this bureaucratic inaction by USCIS and the FBI. *Kaplan v. Chertoff*, supra; *Dawoud v. Dept. of Homeland Security, supra; Moretazpour v. Chertoff, supra; Bodomov v. United States supra.* The fact that the time limit for processing N-400 applications by USCIS and conducting name checks by the FBI has yet to be relegated by these agencies proves the necessity of this Mandamus, since no other adequate remedy is available elsewhere. *Yu v. Brown, supra.*

## VI.    The courts have held that USCIS and the FBI have a non-discretionary duty to process an N-400 case in a timely manner.

Defendants have stated that "it is undisputed that plaintiff has not yet been examined by the DHS concerning his naturalization application" (Memo, pg. 7, ¶ 2). Defendants cite *Baez-Fernandez v. I.N.S.*, 385 F. Supp. 2d 292, 294-95 (S.D.N.Y. 2005), wherein the court found no jurisdiction under the APA where a naturalization applicant

had not been interviewed, and so had no claim under 8 U.S.C. §1147(b).  May it be noted that the Plaintiff in the instant case is not invoking any claims under 8 U.S.C. §1147(b) since his interview has been unnecessarily delayed.  Thus, any reasoning under *Baez-Fernandez v. I.N.S.*, *supra,* concerning 8 U.S.C. §1147(b) is irrelevant.

The fact that Mr. Kakushadze has yet to be interviewed does not bar him from his Mandamus and APA claims.  Rather, in *Ajmal v. Mueller*, No. 07-206, 2007 U.S. Dist. LEXIS 52046 (E.D. Pa. July 17, 2007), the court found jurisdiction over a mandamus action brought to compel USCIS to adjudicate plaintiff's Application for Naturalization (Form N-400). At the time the plaintiff in the above-referenced case brought the mandamus action, USCIS had not yet conducted the naturalization interview.  The court held that even in the absence of specific deadlines, USCIS has a non-discretionary duty to adjudicate applications for naturalization without unreasonable delay and the FBI has a mandatory, non-discretionary duty to complete background checks within a reasonable period of time.   The court in *Elhaouat v. Mueller*, 07-632, 2007 U.S. Dist. LEXIS 58906 (E.D. Pa. August 13, 2007) ruled that USCIS has a non-discretionary duty under the APA to process naturalization applications within a reasonable period of time.  In the instant case, the Plaintiff has afforded the Defendants more than a reasonable amount time to perform their obligations by waiting well over a year for USCIS to schedule his naturalization interview before filing his mandamus action.

In *Hoyoung Song v. Klapakas*, No. 06-05589, 2007 U.S. Dist. LEXIS 27203 (E.D. Pa. April 12, 2007), the court found jurisdiction to compel defendants to adjudicate plaintiffs' Adjustment of Status Applications (Form I-485).  The court held that defendants had **a non-discretionary duty** to act on the applications within a reasonable amount of time. The court also held that 8 U.S.C. § 1252(a)(2)(B)(ii) did not bar

16

jurisdiction to review the delay in adjudication because plaintiffs did not request review of a decision or action, but of inaction.

### VII.    Mandamus has been granted in similar cases, establishing a precedent wherein the district court compels USCIS and the FBI to complete work within a reasonable amount of time – usually days.

The U.S. District Court for the Southern District of New York has previously ruled that mandamus is appropriate if the government has failed within a reasonable amount of time to perform its duties, according to section 555(b) of the APA (*Kim v. Ashcroft,* 340 F. Supp. 2d 384 (S.D.N.Y. 2004). The District Court for the Southern District of New York found jurisdiction to compel adjudication of a plaintiff's nonimmigrant visa application and ordered USCIS to issue a decision on the application within 90 days (*Am. Acad. of Religion v. Chertoff*, 463 F. Supp. 2d 400 (S.D.N.Y. 2006)). The application had been pending for approximately four months when plaintiff filed this action, a comparatively modest amount of time in comparison to the case at hand, which has been pending approximately 17 months – 10 months longer than USCIS states it typically takes to process such a case. In *Am. Acad. of Religion v. Chertoff*, 463 F. Supp. 2d 400 (S.D.N.Y. 2006), the court compelled USCIS to adjudicate the plaintiff's nonimmigrant visa application within 90 days. The application had been pending for approximately four months when plaintiff filed this action.

Mandamus has been granted in a similar case, *Yu v. Brown,* 36 F.Supp.2d 922, 933-34 (D.N.M. 1999), where mandamus was made available when an applicant had waited more than the allotted time for a petition to be adjudicated. Mandamus has been granted and EAJA fees paid where a petition took an inordinate amount of time to process (*Harriett v. Ashcroft,* 277 F.Supp.2d 538, 542-45 (E.D. Pa. 2003)).

The duty owed by the Defendants is ministerial, plainly described, and clear from doubt. Mandamus has been used to compel the Department of Homeland Security to adjudicate petitions, which is clearly within its employees' duties (*Jeffrey v. INS,* 710 F. Supp. 486 (S.D.N.Y. 1989)).

In *Li Duan v. Zamberry*, No. 06-1351, 2007 U.S. Dist. LEXIS 12697 (W.D. Pa. 2007), the court found subject matter jurisdiction over the mandamus action to compel action on the plaintiff's Adjustment of Status Application (Form I-485) and to deny defendants' motion to dismiss. The court held that 8 U.S.C. § 1252(a)(2)(B) does not divest the court of jurisdiction because the "pace" of adjudication is not the type of discretionary "action" contemplated by the statute. The court found that the weight of authority supported a finding that defendants had a nondiscretionary duty to adjudicate an adjustment of status application and therefore, mandamus jurisdiction was appropriate.

### VIII.    The FBI has failed to perform its non-discretionary duty to process this background check in a timely fashion.

The Plaintiff acknowledges the need for security in the country to which he actively pursues naturalization. However, the FBI's explanation of why this and other similar cases are taking such an unreasonable amount of time does not point to issues of security, but of bureaucratic sluggishness.[3]

---

[3] Parenthetically, it bears noting that the entire expansion of the FBI security name check is currently under judicial review. *Bavi v. Mukasey*, No. 07-1394 (C.D. Cal. *filed* Dec. 4, 2007). Plaintiffs claim that defendants violated the notice-and-comment requirements of the APA because defendants' 2002 expansion of the FBI name check constituted a "rule" within the meaning of 5 U.S.C. § 551(4). By failing to provide a notice-and-comment period prior to implementing the rule, plaintiffs allege defendants violated 5 U.S.C. § 553.

In their Memo, the Defendants claim that the FBI has been "actively processing [the] plaintiff's background check" (Memo, pg. 12,¶ 2). The submitted Declaration of Cannon clearly proves otherwise. Though he claims to be familiar with the name check process and has submitted his Declaration in support of the Defendants' Motion, he offers only three instances in the past sixteen months where any effort was performed on Mr. Kakushadze's name check at the FBI, and one of these efforts was merely electronic, requiring brief, almost incidental manpower.

First, the FBI put Mr. Kakushadze's name into its computer system when USCIS sent it to them on September 21, 1996 (Cannon Decl.,¶ 41). This produced "hits" – which is the FBI's slang for any *possible* matches to Mr. Kakushadze's name in its system. Mr. Cannon admits that a "hit" only indicates that the Plaintiff's name is a "*possible* match with FBI records (ital added)" and does not indicate that Mr. Kakushadze's name appears anywhere in their exhaustive date base, only that it might. One month later, the FBI did a manual search and came up with the same vague answer, that the Plaintiff's name "appeared to be associated with FBI records" (Cannon Decl.,¶ 3). It took until October 25, 2007, over 13 months later, for the FBI to begin an undefined "preliminary" review" (Cannon Decl.,¶ 41). Mr. Cannon, who is an expert on such matters, reports no activity after that, and only states that the case is "pending" (Cannon Decl.,¶ 41). It has been over sixteen months. The Plaintiff asserts that three tasks conducted over the course of one year and four months does not constitute "actively processing" a background check, as the Defendants' have portrayed (Memo, pg. 11, ¶ 1; pg. 12, ¶ 2). Given the thin defense of three brief clerical tasks being conducted

over 16 months, the Plaintiff reasserts that it is an unreasonable amount of time *prima facie,* and Mandamus should be granted.

Moreover, Mr. Cannon explains that a "hit" is only on a name, not on a person. He states that, "Common names can have more than 200 hits on FBI records" (Cannon Decl.,¶ 28). The FBI also checks every combination of name, "switching the order of first, last, and middle names" (Cannon Decl.,¶ 28). This means that the "hits" that came up for the Plaintiff could easily be for someone else with a similar or dissimilar name. Given the procedures at the FBI, a name check could remain "pending" *ad infinitum* due to no fault of the applicant, only the resemblance of his name or a permutation of his name to that of another person, who himself ***might*** be in the FBI system.

Additionally, the act of scrambling a name and then checking these fictional, deviated names is arbitrary and capricious. Such a name check is not specified in 8 C.F.R. §335.2(b) or anywhere in the law or regulations (See § II, above). A "name check" that arbitrarily checks scrambled names vaguely similar to that of the applicant does not constitute the "personal investigation" required by Congress of naturalization applicants in 8 U.S.C. § 1446. There is nothing personal about such an arbitrary search, except of course for the unfortunate strain it takes upon the lives of naturalization applicants and their families. The strain it takes upon the limited resources of the agencies involved is just as unnecessary.

In fact, the arbitrary scrambling of a name in FBI name checks can more easily hinder national security. This procedure allows any potentially threatening persons to remain indefinitely in the U.S. as LPRs, waiting in the long name check queue, while

every possible derivation of every applicant's name is reviewed. The court in *Mocanu, et al. v. Mueller, et al.* recently stated that, "If the USCIS delays the application of those who potentially pose a threat to homeland security, thus allowing them to remain in this country for an extended period of time, there is an increased risk to national security" (Exhibit A, pg. 24, ¶ 2). This, however, is unlikely, since every LPR has to pass through a security check before earning their legal status, and the Plaintiff is no exception.

Though the Plaintiff respects the FBI's stated desire for diligence, he sees in Mr. Cannon's bald reporting of the scant efforts taken on his case not a pattern of thoroughness, but of latent and arbitrarily scattered attempts at investigation.

**IX.    The Defendants' argument that name check cases are handled on a "first-in, first-served" basis is false.**

The Defendants' argue that the FBI uses a "first-in, first-served protocol" when conducting background checks (Memo, Pg. 11, ¶2). However, that assertion is proven false by documents submitted by the Defendants. First, Mr. Cannon states that a special team has been set up within NNCPS that only handles re-submitted name check requests. He reports that, "To the extent that the team members are working on only these applications, they are unavailable to process the normal submissions" (Cannon, ¶ 25). These are the normal submissions that are supposedly handled on a "first-in, first-served" basis (Cannon, ¶ 28). Furthermore, Mr. Cannon admits that "hits" on the FBI database, "may further contribute to a delay in process a name check request" (Cannon, ¶ 28). Consequently, someone whose name is similar to a person who may be in the database gets their case moved to the back of line through no fault of his own.

The Defendants referred to another court's case in which the court hypothesized that individuals trying to escape the bureaucratic inertia of the "name check" system through the right of mandamus would unfairly "shuffle to the front of the line" *Qui v. Chertoff*, 486 F. Supp. 2d 412, 2007 WL 1430207, *6 (D.N.J. 2007).  This would be a gross misrepresentation if applied to the instant case:  The Plaintiff is not trying to get preferential treatment, but to get the Defendants to do their job.  Because of the arbitrary "name check" system, he now must clear his name, which is loosely and hypothetically associated with someone who *might* be in the FBI database.  The Plaintiff also has personal humanitarian reasons for pursuing the adjudication of his application, which will follow.

Mr. Cannon goes on to annihilate the "first-in, first-served" protocol defense by stating that, "the proprietary software NNCPS utilizes to process name checks does not report where in the processing queue a particular name check request may lie vis-á-vis other name checks" (Cannon, ¶ 39).  If the name checks were indeed processed on a "first-in, first-served" basis, wouldn't their date of filing tell the FBI where they are in the processing queue?  But this is not the case.  Someone like Mr. Kakushadze, who has not been convicted or associated with any crime, is prevented from obtaining his rightful naturalization because his name or someone's similar name may be in the FBI database.

### X.    The Plaintiff wants his application processed in a timely manner for significant humanitarian reasons.

Many courts have ruled in favor of plaintiffs whose naturalization applications have been delayed due to FBI name checks. (*Kaplan v. Chertoff*, *supra*; *Dawoud v. Dept. of Homeland Security*, *supra*; *Moretazpour v. Chertoff*, *supra*; *Bodomov v. United States*

*supra; Ajmal v. Mueller, supra*). LPRs seeking naturalization clearly are not a priority to USCIS or the FBI, who prefer drastic litigation efforts to the performance of their duties.

USCIS has made some recent changes in its background check procedures, but these do not include naturalization applicants (USCIS memorandum, "Revised National Security Adjudication and Reporting Requirements," Michael Aytes, Associate Director of USCIS (February 4, 2008)). USCIS will expedite a name check under certain extremely limited circumstances (Declaration of Heidi Bijolle, pg. 4, ¶ 13). The guidelines for expedited processing do not consider the many compelling humanitarian reasons why LPRs like Mr. Kakushadze so desire to promptly complete their naturalization process.

Other courts have determined it is necessary to require USCIS to revise its regulations. *Mocanu, et al. v. Mueller, et al.* (*supra*) was brought against USCIS and the FBI by several individuals whose naturalization applications were facing delays (Exhibit A). These cases show a disturbing pattern, wherein USCIS actually cancels a naturalization interview, or in one case two scheduled interviews, and gives no explanation except "unforeseen delays." When pressed, USCIS responded that the FBI name check had not been completed in these cases. Given the aggressive litigation strategy of the government in *Mocanu, et al. v. Mueller, et al.*, which is similar to that in the instant case, the EDP court sent the underlying case for review by the Panel on Multidistrict Litigation pursuant to 28 U.S.C. § 1407 (Exhibit A, pg. 33, footnote 16). The Plaintiff welcomes this or any similar relief provided by the Court for those naturalization applicants in a similar situation, yet he is asking primarily for the prompt adjudication of his case.

The Plaintiff humbly requests that the Court consider the impact of this delay on him and his family.  First, the Plaintiff asks the Court to consider his desire to vote and be represented in the upcoming election as a full participant in our democracy[4].  Secondly, the Plaintiff urges the Court to consider the effect of the unreasonable delaying of this N-400 application on his relatives.  Mr. Kakushadze brought this Mandamus not only because it is his clear right under the law, and due to a sense of justice, but so that he can help his widowed mother.

Mrs. Ludmila Kakushadze is a citizen and resident of Georgia and is now suffering under dire political and economic conditions (Exhibit B, Letter from Plaintiff's attorney to AUSA, with attachments).  There is no centralized heating system available in her home, and she must stay warm by turning on a gas stove, when there is gas to be had. She must then open a window to prevent carbon monoxide poisoning.  Mrs. Kakushadze has no hot water and sometimes no water at all.  Mr. Kakushadze, the Plaintiff's father, died from lack of proper medical care, and so the Plaintiff naturally fears for his mother's life.  He wishes to sponsor her and bring her here to live with her only surviving relatives, but cannot do so until he becomes a citizen.  Such a family need has not been considered in USCIS's guidelines for expediting name checks (Declaration of Heidi Bijolle, pg. 4, ¶ 13).  Until revisions are made to USCIS and the FBI's procedures, Mr. Kakushadze relies on this action.

**CONCLUSION**

The Defendants have taken an unreasonable amount of time to adjudicate the Plaintiff's naturalization application, thereby depriving him of the opportunity to become

---

[4] By living legally in the U.S. and faithfully paying taxes on a long-term basis, LPRs who are indefinitely denied naturalization suffer from taxation without representation.

a citizen of the United States and to allow that peace of mind to which the Plaintiff is entitled to under the Immigration and Nationality Act, as amended.

The Defendants have unreasonably and without substantial justification failed to perform their duties.

The Plaintiff has exhausted any administrative remedies that may exist.

WHEREFORE, Plaintiff prays that the Court:

(1) Assume jurisdiction of this case;

(2) Deny the Defendants' Motion to Dismiss;

(2) Compel the Defendants and those persons acting under them to perform their duty to adjudicate the Plaintiff's pending N-400 application within a reasonable amount of time.

(3) Grant such other and further relief as this Court deems proper under the circumstance; and

(4) Award attorney's fees and costs of court pursuant to the Equal Access to Justice Act (EAJA) or other applicable law.

Dated: New York, New York
February 20, 2008

Respectfully submitted,

_____
Law Office of Jan H. Brown, PC
Jan H. Brown, Esq.
1150 Ave. of the Americas, Ste. 700
New York, NY 10036
212-397-2800

Counsel for Plaintiff