UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                    :

ZURAB KAKUSHADZE,

                                    :

                       Plaintiff,         :         07 Civ. 8338 (DF)

                                      :

           -against-                    **MEMORANDUM**

                                     :     **AND ORDER**

MICHAEL CHERTOFF, SECRETARY OF THE
DEPARTMENT OF HOMELAND SECURITY and   :
ROBERT MUELLER, DIRECTOR, FEDERAL
BUREAU OF INVESTIGATION,             :
                           Defendants.

                                      :
------------------------------------------------------------------------X

**DEBRA FREEMAN, United States Magistrate Judge:**

       In this action for a writ of mandamus, before me on consent pursuant to 28 U.S.C.

§ 636(c), plaintiff Zurab Kakushadze ("Plaintiff") seeks to compel defendants Michael Chertoff,

Secretary of the Department of Homeland Security ("DHS"), and Robert Mueller, Director of the

Federal Bureau of Investigation ("FBI") (collectively, "Defendants") to adjudicate his pending

application for naturalization as a United States citizen.  Currently before the Court is

Defendants' motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(1) of the Federal

Rules of Civil Procedure.

       For the reasons discussed herein, Defendants' motion is granted in part and denied in

part.  The motion is granted to the extent that the DHS seeks dismissal of Plaintiff's claims

against it for lack of subject matter jurisdiction.  The motion is denied to the extent that the FBI

similarly seeks dismissal, as the Court finds that it has jurisdiction over Plaintiff's claims against

the FBI.

## BACKGROUND

### A.     Factual Background

The following facts are taken from Plaintiff's Complaint and other documents submitted

by Plaintiff.[1]  Plaintiff is a native and citizen of the Republic of Georgia, and has been a lawful

permanent resident of the United States since December 3, 2001.  (Complaint for a Writ in the

Nature of Mandamus, dated Sept. 18, 2007 ("Compl.") (Dkt. 1), at ¶ 5.)  Plaintiff has a Ph.D. in

Physics from Cornell University and is employed as a managing director in the finance industry.

(Compl. ¶ 13; *id.* at Ex. D.)  According to his resume, Plaintiff's interests include "[g]ood food

and wine, traveling, swimming, scuba diving, horseback riding, cycling, weight training,

classical music/opera, chess . . . [and] backgammon."  (Compl. Ex. D.)  According to Plaintiff,

he is a "law-abiding citizen" who is "fingerprinted regularly" for his job without any problems.

(Compl. at ¶ 13.)

On or about September 6, 2006, Plaintiff filed an application for naturalization ("N-400")

with United States Citizenship and Immigration Services ("USCIS").[2]  (Compl. ¶ 11; *id.* at

Ex. B.)  N-400 applications for naturalization submitted in New York City regularly take seven

months to process, according to a report from the USCIS website, which has been provided by

---

[1] Unlike on a Rule 12(b)(6) motion, a court resolving a Rule 12(b)(1) motion for lack of subject matter jurisdiction may refer to evidence outside the pleadings.  (*See* discussion *infra* at 8-9.)

[2] USCIS is the component of the DHS that is responsible for the administration of the agency's immigration and naturalization adjudication functions and establishing immigration services policies and priorities.  The parties and other courts that have considered similar cases have sometimes used "USCIS" or "CIS" to refer to defendant the DHS.

Plaintiff.[3]  (Compl. ¶ 15; *id.* at Ex. F.)  Nonetheless, Plaintiff's application was still not

adjudicated by USCIS in September 2007 – a year after Plaintiff submitted it – leading him to

commence this action on September 18, 2007.[4]  (Compl. at ¶ 15.)

According to Plaintiff, he wished to be naturalized as soon as possible so that he could

sponsor his "widowed mother," Ludmila Kakushadze, a citizen and resident of the Republic of

Georgia, for lawful permanent resident status in the United States.  (Pl. Mem. at 24; *see also*

Ex. B.)  According to Plaintiff, Ms. Kakushadze suffers hardships in the Republic of Georgia

because of the "dire political and economic conditions" there, including "no central heating

system in her apartment . . . [so] the only way she can stay warm during cold nights is by turning

on her gas stove, which . . . is a very dangerous way of staying warm."  (Pl. Mem. at Ex. B.)

### B.    <u>Procedural History</u>

Plaintiff filed his Complaint on September 18, 2007.  In the Complaint, Plaintiff claims

that the DHS and the FBI "have taken an unreasonable amount of time to adjudicate [his]

naturalization application, thereby depriving him of the right to become a citizen of the United

States."  (Compl. at ¶ 20.)  Plaintiff seeks a writ of mandamus compelling the DHS and the FBI

"to perform their duty to adjudicate Plaintiff's pending N-400 application" for citizenship.  (*Id.*

at ¶ 22.)  In his Complaint, Plaintiff alleges that this Court has subject matter jurisdiction over

the action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 5 U.S.C. §§ 555(b) &

---

[3]According to a letter written by Plaintiff and addressed to an official at USCIS, which
Plaintiff attached to his Complaint, Plaintiff's wife was naturalized "less than 4 and a half
months" from the date that USCIS received her application.  (*See* Compl. Ex. E.)

[4] It is the Court's understanding that Plaintiff's application has still not been adjudicated
as of the date of this Memorandum and Order.

706(1) of the Administrative Procedures Act, 8 U.S.C. § 1329 (the "APA"); the Immigration &

Naturalization Act (the "INA"); and 28 U.S.C. § 1361 (mandamus).  (*See id.* at ¶ 2.)

Defendants moved to dismiss the Complaint on January 3, 2008.  (*See* Notice of Motion,

dated Jan. 3, 2008 (Dkt. 7).)  According to Defendants, Plaintiff's claims against both the DHS

and the FBI should be dismissed for lack of subject matter jurisdiction.  As to Plaintiff's claims

against the DHS, Defendants argue that the mandamus statute does not provide subject matter

jurisdiction because the DHS does not have a "clear nondiscretionary duty" to adjudicate

Plaintiff's naturalization application within any specific amount of time.  (Memorandum of Law

in Support of Defendants' Motion to Dismiss, dated Jan. 3, 2008 ("Def. Mem.") (Dkt. 8), at 6.)

Defendants further argue that the DHS is precluded by law from adjudicating Plaintiff's

application at this time because the FBI has not completed its required background investigation.

(*Id.* at 7-8.)  Moreover, according to Defendants, the APA does not confer subject matter

jurisdiction because Plaintiff cannot show that the DHS "failed to take a discrete action that it is

required to take."  (*Id*. at 10.)  As to Plaintiff's claims against the FBI, Defendants contend that

"[n]either the mandamus statute nor the APA affords this Court jurisdiction [over the FBI]

because the FBI owes no 'clear nondiscretionary duty' to complete the background check

regarding [P]laintiff in less time than it has taken."  (*Id.* at 10.)  Defendants also argue that the

FBI has been actively processing Plaintiff's investigation along with "millions" of other

background checks it must conduct each year, and that, accordingly, the length of the delay in

Plaintiff's case is not unreasonable.  (*Id.* at 11-12.)

Plaintiff submitted his opposition to Defendants' motion on February 20, 2008.  (*See*

Memorandum of Law in Opposition to Defendant's Motion to Dismiss, dated Feb. 20, 2008

("Pl. Opp. Mem.") (Dkt. 13).)  In opposition, Plaintiff argues, *inter alia*, that the DHS is not required to wait for the FBI to complete its "name check" (*id*. at 5-7), and has a duty to "adjudicate the case in a timely fashion" irrespective of the name check (*id*. at 9).  According to Plaintiff, the APA "requires that agency matters be resolved within a reasonable time."  (*Id*. at 10 (citing 5 U.S.C. § 555(b)).)  Plaintiff further contends that mandamus provides a "check or balance" (*id*. at 15), that is necessary to prevent "an endless round of passing the blame between USCIS and the FBI, when cases such as the underlying case lie neglected and dormant due to unsubstantiated rumors of a name's existence in the FBI database" (*id*. at 14).  According to Plaintiff, the FBI has failed to perform its non-discretionary duty to process his background check in a timely fashion.  (*Id*. at 18.)  Contrary to Defendants' assertion that the FBI is "actively processing" Plaintiff's background check, Plaintiff accuses the FBI of "bureaucratic sluggishness" (*id*.), and claims it has engaged in only "scant efforts . . . [and] latent and arbitrarily scattered attempts at an investigation" (*id*. at 21).

Defendants submitted a reply on March 19, 2008.  (*See* Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss, dated Mar. 19, 2008 ("Def. Reply Mem.") (Dkt. 21).)  In their Reply, Defendants urge again that the DHS is prohibited by statute from granting Plaintiff naturalization while his name check is pending with the FBI (*id*. at 2), and argue that a recent case from another circuit that reached a contrary conclusion[5] was "wrongly decided" (*id*. at 3-6).  In addition, Defendants reiterate their arguments that, *inter alia*, the FBI has no nondiscretionary duty to perform Plaintiff's background check (*id*. at 14), and argue that,

---

[5] *See Mocanu v. Mueller*, No. 07-0445, 2008 U.S. Dist. LEXIS 10122 (E.D. Pa. Feb. 8, 2008) (enjoining USCIS from using FBI name checks as a factor in adjudicating the plaintiffs' naturalization applications).

in any event, the amount of time that the FBI has taken to complete its background check of Plaintiff is not unreasonable (*id*. at 14).[6]

###    C.    Evidence Submitted by Defendants

In conjunction with their motion to dismiss, Defendants have submitted declarations from officials at the DHS and the FBI, purporting to explain how the government agencies have processed Plaintiff's application since it was received by USCIS on September 6, 2006. (*See* Declaration of Michael A. Cannon (Section Chief of the National Name Check Program Section at the Headquarters of the Federal Bureau of Investigation), dated Dec. 10, 2007 ("Cannon Decl."); Declaration of Heidi Bijolle (Supervisory Center Adjudications Officer for the United States Citizenship and Immigration Services), dated Jan. 3, 2008 ("Bijolle Decl.").)

According to these declarations, on or about September 18, 2006, the DHS submitted to the FBI a request for a background security name check regarding Plaintiff. (Bijolle Decl. at ¶ 6.) Then, on or about September 21, 2006, the FBI electronically checked Plaintiff's name against the FBI's Universal Index, which yielded "hits" indicating possible matches with records residing in the FBI Headquarters and/or various field offices. (Cannon Decl. at ¶ 41.) The FBI states that, on or about October 18, 2006, it proceeded to conduct a secondary, manual search on Plaintiff's name, which also indicated that Plaintiff's name appeared to be associated with FBI records. (*Id.*) On or about October 25, 2007 (after Plaintiff filed his Complaint), the FBI claims

---

[6] In addition, after the motion was fully briefed, Defendants submitted to the Court a slip opinion from the Eastern District of North Carolina, *Mohamed Ibrahim v. Chertoff, et al.*, No. 5:07-CV-141-BR, slip op. (E.D.N.C. Dec. 12, 2007) (dismissing claims against USCIS and the FBI for lack of subject matter jurisdiction), and Plaintiff submitted an article, *FBI Name Check on Naturalization Applicants Not Authorized, Court Holds*, Interpreter Releases, Vol. 85, No. 8., Feb. 18. 2008 (reviewing *Mocanu v. Mueller*, No. 07-0445, 2008 U.S. Dist. LEXIS 10122 (E.D. Pa. Feb. 8, 2008)).

that it initiated a preliminary manual file review to locate paper files and to determine whether those files are germane to Plaintiff's name. (*Id.*) According to the FBI, the name check is currently "pending in the normal course of processing in accordance with the [FBI's] first-in first-served protocol" (*id.*), and the FBI is unable to estimate the time required to complete it (*id.* at ¶ 40).

The FBI processed in excess of 3.4 million name checks in fiscal year 2006. (*Id.* at ¶ 21.) According to the FBI, historically, 68 percent of name checks submitted by USCIS are returned to USCIS within 48-72 hours (*id.* at ¶ 13), and an additional 22 percent are returned to USCIS with 30-60 days (*id.* at ¶ 14). The processing time for the remaining 10 percent "depends upon a number of factors, including where in the processing queue the name check lies; the workload of the analyst processing the name check; the volume of expedited name checks the analyst must process . . . ; the number of "Hits" (i.e. possible matches) that must be retrieved, reviewed and resolved; the number of records from various Field Offices that must be retrieved, reviewed and resolved; and, more generally, the staff resources available to conduct the checks." (*Id.* at ¶ 39.)

According to USCIS, it cannot schedule an interview regarding an application for naturalization until the FBI provides it with a definitive response to its request for a name check. (Bijolle Decl. at ¶ 5.)

## DISCUSSION

## I.    RELEVANT LEGAL AUTHORITY

### A.    Naturalization Law

Under the Constitution, Congress has the power to "establish a[] Uniform Rule of Naturalization." U.S. Const. Art. I., § 8. The law governing naturalization has been described as

a five-stage process. *See, e.g., Escaler v. United States Citizenship & Immigration Servs.*, No. 03 Civ. 8418 (BSJ), 2007 U.S. Dist. LEXIS 49183, at *2 (S.D.N.Y. July 5, 2007). First, an applicant must submit application materials to USCIS. *See* 8 U.S.C. § 1445(a); 8 C.F.R. §§ 316.2, 316.4, 334.1 & 334.2 (2007). Second, the Government conducts an investigation into the applicant's background, which includes a full criminal background investigation by the FBI that must be completed before proceeding to the next stage.[7] *See* 8 U.S.C. § 1446(a); 8 C.F.R. §§ 335.1, 335.2 (2007). Third, USCIS tests the applicant for proficiency in the English language and knowledge of United States history and government. *See* 8 U.S.C. § 1423(a) (2007). Fourth, the applicant is examined under oath by a USCIS official, who generally is required to grant or deny the application for naturalization within 120 days of the examination. *See* 8 U.S.C. § 1447; 8 C.F.R. § 335.2 (2000). Finally, if USCIS grants the application, the applicant must attend a public oath ceremony. *See* 8 U.S.C. § 1448; 8 C.F.R. § 310.3 (2007).

**B.    Federal Rule of Civil Procedure 12(b)(1)**

A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). When jurisdiction is challenged, "plaintiffs bear the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists," *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (internal quotation marks omitted); *see also Aurecchione v. Schoolman Transp. Sys.*, 426 F.3d 635, 639 (2d Cir. 2005), and the district court may examine evidence outside of the pleadings to make this determination, *see Makarova,* 201 F.3d at 113 (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.

---

[7] It appears that Plaintiff's naturalization application became stalled at this stage.

1986)); *see also Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d

Cir. 2000) (in resolving a Rule 12(b)(1) motion, district courts may "resolve the disputed

jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits"

(citation omitted)).  "[T]he general rule is that subject matter jurisdiction is assessed at the time a

complaint is filed."  *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 510 F. Supp. 2d 299,

306 (S.D.N.Y. 2007).

### C.    Federal Question Jurisdiction

The federal question statute confers subject matter jurisdiction on the district courts over

actions "arising under" federal law.  28 U.S.C. § 1331 ("The district courts shall have original

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United

States.").  "[I]n order to sustain federal jurisdiction, the complaint must allege a claim that arises

under the Constitution or laws of the United States and that is neither made solely for the

purpose of obtaining jurisdiction nor wholly insubstantial and frivolous."  *Carlson v. Principal*

*Fin. Group,* 320 F.3d 301, 306 (2d Cir. 2003).  In the present context, "[t]his has been

interpreted to mean that federal question jurisdiction exists where:  '(1) the claim turns on an

interpretation of the laws or Constitution of the United States and (2) the claim is not 'patently

without merit.'"  *Nigmadzhanov v. Mueller*, No. 07 Civ. 1279 (CM), 2008 U.S. Dist. LEXIS

35915, *5 (S.D.N.Y. May 1, 2008) (quoting *Kim v. Ashcroft,* 340 F. Supp. 2d 384, 388

(S.D.N.Y. 2004).

"The test for determining whether a claim is 'patently without merit' is 'whether the right

claimed is so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or

otherwise completely devoid of merit as not to involve a federal controversy.  . . .  It is not

necessary to determine whether the cause of action is one on which the plaintiff could actually recover.'"  *Bartolini v. Ashcroft*, 226 F. Supp. 2d 350, 354 (D. Conn. 2002) (alterations in original) (quoting *New York Dist. Attorney Investigators Police Benevolent Ass'n v. Richards*, 711 F.2d 8, 10 (2d Cir. 1983)).  "[T]he question of whether a federal statute supplies a basis for subject matter jurisdiction is separate from, and should be answered prior to, the question of whether the plaintiff can state a claim for relief under that statute."  *Carlson v. Principal Fin. Group*, 320 F.3d 301, 306 (2d Cir. 2003).

### D.    The Administrative Procedures Act

The APA provides for judicial review of agency action in certain limited instances.  *See* 5 U.S.C. § 706.  Specifically, it allows "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" to seek judicial review of the agency's action.[8]  5 U.S.C. § 702.  The APA provides that the reviewing court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).  Moreover, the APA includes a general requirement that "[w]ith due regard to the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).  While the APA provides for judicial review of agency action, it does not apply "to the extent that . . . agency action is committed to agency discretion by law."  5 U.S.C. § 701(a)(2).

---

[8] The definition of "agency action" includes "failure to act."  5 U.S.C. § 551(13).

### E.     **Mandamus Jurisdiction**

The mandamus statute confers jurisdiction over actions to compel the government to act. 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."). "The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff . . . only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer,* 466 U.S. 602, 616 (1984) (citing *Kerr v. United States District Court,* 426 U.S. 394, 402-03 (1976)); *see also McHugh v. Rubin*, 220 F.3d 53, 57 (2d Cir. 2000) ("This Court has held that a writ of mandamus may not be granted pursuant to § 1361 unless there is 'a plainly defined and peremptory duty on the part of the defendant to do the act in question.' (quoting *Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989))). Accordingly, "jurisdiction under the mandamus statute is limited to actions seeking to compel the performance of a *nondiscretionary* duty." *Duamutef v. INS*, 386 F.3d 172, 180 (2d Cir. 2004) (citing *Heckler*, 466 U.S. at 616).

## II.     **JURISDICTION IN THIS CASE**

Plaintiff claims that "[t]his Court has jurisdiction over the present action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 5 U.S.C. §§ 555(b) & 706(1) [of] the Administrative Procedures Act; 8 U.S.C. § 1329, [the] Immigration & Naturalization Act, and 28 U.S.C. § 1361." (Compl. ¶ 2.)[9]  As explained below, while none of these statutes provides a

---

[9] The Court construes Plaintiff's alleged grounds for jurisdiction as the mandamus statute (28 U.S.C. § 1361) and federal question jurisdiction (28 U.S.C. § 1331) based on the APA.  The other statutes cited in the Complaint – the INA and 8 U.S.C. § 1329 – are not discussed in Plaintiff's brief and do not provide an independent basis for jurisdiction.  First, as to the INA, while "[t]he immigration statutes create two specific points at which a district court may

jurisdictional basis for Plaintiff's claims against the DHS, the Court has jurisdiction over Plaintiff's claims against the FBI pursuant to the federal question statue and the mandamus statute.

### A.     Claims Against the DHS

Plaintiff asserts that this Court has subject matter jurisdiction over his claims against the DHS on the basis of federal question jurisdiction and mandamus jurisdiction.  Defendants, however, argue that neither of these forms of jurisdiction apply because the DHS has no nondiscretionary duty to adjudicate Plaintiff's application for naturalization within a certain amount of time.

A number of district courts have recently considered this point (*i.e.* whether or not the DHS and the FBI have nondiscretionary duties to process and adjudicate immigration applications), especially in the context of applications for adjustment of status, but it does not appear that any circuit court has ruled on this question.  *See Nigmadzhanov*, 2008 U.S. Dist. LEXIS 35915, at *9-12 (reviewing case law in this area).[10]  Some courts in this circuit have

---

intervene in the naturalization process[,] . . . if the INS [now known as USCIS] fails to render a decision upon an application within 120 days of the applicants' naturalization examination, . . . [and] if the INS denies a naturalization application," *Langer v. McElroy*, No. 00 Civ. 2741 (RWS), 2002 U.S. Dist. LEXIS 23847, *6-7 (S.D.N.Y. Dec. 13, 2002) (citations omitted), neither of these circumstances is present in this case.  Second, "8 U.S.C. § 1329 applies only to actions brought by the United States; it expressly does not provide a basis for jurisdiction in actions 'against the United States or its agencies or officers.'"  *Escaler v. United States Citizenship & Immigration Servs.,* No. 03 Civ. 8418 (BSJ), 2007 U.S. Dist. LEXIS 49183, at *12 (S.D.N.Y. July 5, 2007) (quoting 8 U.S.C. § 1329)).

[10] In *Nigmadzhanov,* the plaintiff sought to compel the FBI and the DHS to take action on his adjustment of status application, and the defendants moved to dismiss for lack of subject matter jurisdiction.  The Court determined that:

> The arguments about whether jurisdiction exists in the circumstances . . . have been made numerous times before district courts across the country . . . .  The

concluded that the DHS has a nondiscretionary duty to process adjustment of status applications within a reasonable amount of time.  *See, e.g., id.* at *15 ("The secretary cannot be charged with immigration administration and simultaneously have no duty to administrate.  Such a result is irrational." (citation omitted)); *Alkeylani v. Dep't of Homeland Sec.,* 514 F. Supp. 2d 258, 263 (D. Conn. 2007) ("while the decision to grant or deny an adjustment application is wholly discretionary, 'the decision of whether to actually *adjudicate* an adjustment application . . . is not discretionary.'" (citation omitted); *Kim,* 340 F. Supp. at 393 ("[T]he [US]CIS simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely.").[11]

There is, however, an important distinction between these cases and the instant case.  As noted above, the plaintiffs in the cited cases had applied for adjustment of status (*e.g.* permanent residency), whereas Plaintiff in this case has applied for naturalization (*i.e.* citizenship). Accordingly, the courts in the cited cases did not consider the obligations of the DHS in light of the particular law of naturalization.  In the context of naturalization, courts outside this district

---

district courts have split both between and within circuits, and even districts. . . . Courts in the Southern District of New York have likewise been divided. . . . No Circuit Court of Appeals has addressed the issue.

*Id.* at *8-11 (citing numerous cases).

[11] *But see Espin v. Gantner*, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) (noting that "[n]o statute or regulation requires the Government to process adjustment of status applications within any particular time" (citing cases)); *Zaytsev v. Gantner*, No. 04 Civ. 7101 (WHP), 2004 U.S. Dist. LEXIS 28632, at *2 (S.D.N.Y. Sept. 24, 2004) (in case seeking decision on application for adjustment of status, holding that "[US]CIS is not required to make any determinations until the requisite security checks have been completed"); *Hui Jin Zheng v. Reno*, 166 F. Supp. 2d 875, 879-80 (S.D.N.Y. 2001) ("[T]here is . . . no requirement that the application [for adjustment of status] be decided within a specific period of time . . . and the scheduling remains within the discretion of [USCIS].").

have concluded that the DHS is precluded by statute from adjudicating a naturalization

application prior to the completion of the FBI's criminal background check. *See, e.g., Abdul*

*Qadir v. Gonzales*, No. 07-3741 (FLW), 2008 U.S. Dist. LEXIS 50355, at *11 (D.N.J. June 26,

2008) ("[US]CIS does not have a mandatory duty to take action on an application for

naturalization until the FBI has completed its background checks." (quoting *Kaplan v. Chertoff*,

481 F. Supp. 2d 370, 401 (E.D.Pa. 2007)).

       Defendants raise this point here, contending that DHS may not process Plaintiff's

application because "federal regulation actually prevents the DHS from conducting [P]laintiff's

[naturalization] examination at this point because the FBI has not completed [P]laintiff's

background check." (Def. Mem. at 7-8). Defendants rely on 8 C.F.R. § 335.2(b), which

provides that USCIS may conduct an initial examination of a naturalization applicant "only after

the Service has received a definitive response from the Federal Bureau of Investigation that a full

criminal background check of an applicant has been completed."[12] While Plaintiff argues that

USCIS's requirement of an FBI name check is an arbitrary extension of C.F.R. § 335.2(b), which

explicitly requires only a "full criminal background check" (*see* Def. Opp. Mem. at 5 (arguing

that "[t]here is no law or mandate, congressional or otherwise, that calls for the completion of a

'name check' before a naturalization application can be completed")), USCIS's interpretation of

a "full criminal background check" to include a name check is not "plainly erroneous" or

inconsistent with C.F.R. § 335.2(b). *See Auer v. Robbins*, 519 U.S. 452, 461 (1997) (substantial

---

      [12] 8 C.F.R. § 335.2(b) gives effect to Pub. L. No. 105-119, 111 Stat. 2448 (Nov. 26, 1997). *See Kaplan*, 481 F. Supp. 2d at 379. According to Pub. L. No. 105-119, 111 Stat. 2448 (Nov. 26, 1997), "none of the funds appropriated or otherwise made available to [USCIS] shall be used to complete adjudication of an application for naturalization unless [USCIS] has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed."

deference owed to agency's interpretation of its own regulation unless the interpretation is "plainly erroneous or inconsistent with the regulation") (internal quotation marks and citation omitted); *see also Hani v. Gonzales*, No. 3:07-CV-517-S, 2008 U.S. Dist. LEXIS 37880, at *18 (W.D. Ky. May 5, 2008) ("Numerous courts have held . . . that FBI name checks are properly included within the parameters of the 'full criminal background check.'" (citing cases)).[13]

Accepting that 8 C.F.R. § 335.2(b) requires USCIS to wait for the results of the FBI name check, this Court finds that USCIS has no mandatory or nondiscretionary duty to adjudicate Plaintiff's naturalization application prior to receiving such results.  Hence, the APA's requirement under 5 U.S.C. § 555(b) that an agency "conclude . . . matter[s]" "within a reasonable time" does not apply.  *See* 5 U.S.C. § 701(a)(2).  In the absence of such a requirement, Plaintiff's APA claim against the DHS is "patently without merit" and cannot be used to ground subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  *Zheng v. Reno*, 166 F. Supp. 2d 875, 880-81 (S.D.N.Y. 2001) (no subject matter jurisdiction where APA claim was "patently without merit.").  Further, in the absence of a mandatory duty to act, subject matter jurisdiction is not proper pursuant to the mandamus statute, 28 U.S.C. § 1361.  *See Duamutef v. INS*, 386 F.3d 172, 180 (2d Cir. 2004) ("jurisdiction under the mandamus statute is limited to actions seeking to compel the performance of a nondiscretionary duty." (citation omitted)).

Accordingly, Plaintiff's claims against the DHS are dismissed.  *See, e.g., Qadir*, 2008 U.S. Dist. LEXIS 50355, at *11 ("[S]ince [US]CIS's failure to process Plaintiff's application for

---

[13] *But see Mocanu*, 2008 U.S. Dist. LEXIS 10122, at *26 ("There is simply no legislation which mandates or authorized USCIS to employ an FBI name check as a prerequisite for a lawful permanent resident to become a naturalized citizen."); *cf. Mohammad v. Keisler*, No. 3:07-CV-594-S, 2008 U.S. Dist. LEXIS 37878, at *3 n.1 (W.D. Ky. May 5, 2008) ("This court does not find *Mocanu* persuasive and will instead follow those cases holding that the name check is properly included as a component of the 'full criminal background check.'" (citing cases)).

naturalization is *solely* because it is waiting for the FBI to complete criminal background

checks, . . . Plaintiff's APA and Mandamus claims against the [US]CIS are dismissed."); *Kaplan*,

481 F. Supp. 2d at 401 ("[I]f [US]CIS is failing to process Plaintiffs' applications for

naturalization *solely* because it is waiting for the FBI to complete criminal background checks,

Plaintiffs' APA claim will fail.  Without a showing of a mandatory duty to act, there can be no

claim under the APA for unreasonable delay."); *see also Karan v. McElroy*, No. 02 Civ. 6678

(JGK), 2003 U.S. Dist. LEXIS 9487, at *2 (S.D.N.Y. Apr. 21, 2003) (Where defendant has no

nondiscretionary duty to act, "[n]either the Administrative Procedure Act . . .  nor the mandamus

statute, 28 U.S.C. § 1361, confers subject matter jurisdiction on the Court.").

### B.    Claims Against the FBI

Unlike the DHS, the FBI has no statutory bar to processing Plaintiff's application at this

time, and this Court agrees with those courts that have found that the FBI has a nondiscretionary

duty to conduct a naturalization applicant's name check, and to do so within a reasonable amount

of time.  *See, e.g., Qadir*, 2008 U.S. Dist. LEXIS 50355, at *16 ("[S]ince the FBI has a

mandatory duty to act, the APA requires that the FBI complete the criminal background checks

in a reasonable amount of time." (citing *Kim*, 340 F. Supp. 2d at 393)); *Rajput v. Mukasey,* No.

C07-1029RAJ, 2008 U.S. Dist. LEXIS 48281, at *12 (W.D. Wash. June 20, 2008) ("Neither

statute nor regulation mandates that a name check be part of the background investigation.

Regardless, there is no indication, either in the statute or regulation, that the FBI has discretion to

decline to complete a petitioner's background check."); *Ghashghai v. Mukasey*, No. 07CV0163-

LAB (RBB), 2008 U.S. Dist. LEXIS 20128, at *7 (S.D. Cal. Mar. 13, 2008) ("If the FBI has

simply refused or failed to carry out its nondiscretionary statutory duty to conduct a background

16

check, the Court has jurisdiction to compel it to do so within a reasonable time."); *Kaplan*, 481 F. Supp. 2d at 401 ("[W]here Congress has conditioned [US]CIS's mandatory action on the FBI's completion of background checks . . . Congress has, by implication, imposed on the FBI a mandatory duty to complete the background checks."); *see also Nigmadzhanov*, 2008 U.S. Dist. LEXIS 35915, at *21 (in adjustment of status context, the "FBI has duty to complete background checks by implication").[14]

Because the FBI has a nondiscretionary duty to perform background checks, subject matter jurisdiction under the APA is proper if Plaintiff's claim under that statute is not "patently without merit." *See Saleh v. Ridge*, 367 F. Supp. 2d 508, 511-12 (S.D.N.Y. 2005). Plaintiff claims that the FBI has unreasonably delayed the completion of his background check in violation of 5 U.S.C. § 555(b) and § 706(1). *See* 5 U.S.C. § 555(b) ("[W]ith due regard to the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."); *see also* § 706(1) (A reviewing court may "compel agency action unlawfully withheld or unreasonably delayed."). The issue, therefore, is whether, in the circumstances presented here, Plaintiff's claim that the FBI has unreasonably delayed the completion of his background check is patently without merit.

"What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Saleh,* 367 F. Supp 2d at 512 (citation omitted). "In determining reasonableness, [courts] look to the source of delay – *e.g.*,

_____

[14] As with other aspects of the law in this area, some district courts have reached contrary conclusions. *See Rajput*, 2008 U.S. Dist. LEXIS 48281, at *13 n.7 (noting that "no consensus has emerged from district court decisions addressing whether the FBI has a mandatory duty to complete its background investigation of naturalization petitioners." (collecting cases)).

the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding." *Reddy v. CFTC*, 191 F.3d 109, 120 (2d Cir. 1999) (citation omitted); *accord Kim*, 340 F. Supp. 2d at 393.

In this case, Plaintiff filed an application for naturalization on or about September 6, 2006. (Compl. ¶ 11; *id.* at Ex. B.) On September 18, 2006, the DHS claims to have submitted to the FBI a request for a background security name check regarding Plaintiff. (Bijolle Decl. at ¶ 6.) According to the FBI, on September 21, 2006, it electronically checked Plaintiff's name against its Universal Index, which yielded "hits" indicating possible matches with records residing in the FBI Headquarters and/or various field officers. (Cannon Decl. at ¶ 41.) The FBI further states that, on October 18, 2006, it conducted a secondary, manual search on Plaintiff's name, which also indicated that Plaintiff's name appeared to be associated with FBI records. (*Id.*) Then, over one year later, on October 25, 2007, the FBI purportedly initiated a preliminary manual file review to locate paper files and to determine whether those files were germane to Plaintiff's name. (*Id.*)

The FBI has offered evidence as to the large volume of name checks it must process each year and about the other various factors that contribute to the degree of complexity of the investigations it must conduct. (Cannon Decl. ¶¶ 21, 39.) The FBI, however, has provided no explanation for why there was more than one year of apparent inactivity between its "secondary manual name search" on October 18, 2006 and the initiation of its "preliminary manual review" on October 25, 2007. (*See* Cannon Decl. ¶ 41.) *See Rajput*, 2008 U.S. Dist. LEXIS 48281, at *19-20 (FBI's lack of explanation was most compelling reason to find that delay was unreasonable). Further, in this case, the FBI has not alleged that Plaintiff contributed to this

18

delay in any way.  *Cf. Zheng*, 166 F. Supp. 2d at 880 (claim was patently without merit where plaintiff had caused all but nine months of the delay); *Batista v. I.N.S.*, No. 99 Civ. 2847 (MBM), 2000 U.S. Dist. LEXIS 1647, at *13 (S.D.N.Y. Feb. 17, 2000) (claim lacked merit where a large part of the three-year delay was attributable to plaintiff).

Accordingly, it cannot be said that Plaintiff's claim that the FBI unreasonably delayed the processing of his application is "patently without merit."  *See Bartolini v. Ashcroft*, 226 F. Supp. 2d 350, 354 (D. Conn. 2002) (a claim is patently without merit if it is "so insubstantial, implausible, foreclosed by prior decisions . . . or otherwise completely devoid of merit as not to involve a federal controversy." (citation omitted); *see also Rajput*, 2008 U.S. Dist. LEXIS 48281, at *20, 23 (on summary judgment motion, holding that two-year delay was unreasonable and ordering FBI to complete name check in 35 days); *Karimushan v. Chertoff,* No. 07-2995, 2008 U.S. Dist. LEXIS 47167, at *23 (E.D. Pa. June 11, 2008) (on summary judgment motion, holding that two-year delay was unreasonable and ordering that the FBI complete its name check within 90 days).

Because Plaintiff's claims against the FBI are not patently without merit, they are not subject to dismissal for lack of subject matter jurisdiction.[15]

---

[15] "[A]t this stage of litigation (*i.e.*, the pleading stage), it is not necessary for the district court to determine which party shall ultimately prevail." *Aurecchione v. Schoolman Transp. Sys.,* 426 F.3d 635, 638 (2d Cir. 2005).  While Plaintiff, in his memorandum of law in opposition to defendants' motion to dismiss, requested that the Court "compel the Defendants . . . to perform their duty to adjudicate Plaintiff's pending N-400 application" (Pl. Opp. Mem. at 1), the only motion currently pending before the Court is Defendants' motion to dismiss.  Therefore, the Court has not considered other relief at this time.  *See, e.g., Nigmadzhanov*, 2008 U.S. Dist. LEXIS 35915, at *20 ("I decline to find a five – or six and one half – year delay reasonable (or unreasonable) as a matter of law at this stage of the litigation . . . .  That issue is better reached on a motion for summary judgment.").

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint pursuant to

Rule 12(b)(1) is GRANTED in part and DENIED in part.  Specifically, the motion to dismiss

Plaintiff's claims against the DHS is granted, without prejudice to Plaintiff's right to reassert

such claims in the future, should the FBI complete its criminal background check, and should the

DHS then fail to act on Plaintiff's naturalization application within a reasonable amount of time.

The motion to dismiss Plaintiff's claims against the FBI is denied.

Dated:  New York, New York
      July 24, 2008

                        Respectfully Submitted,


                        DEBRA FREEMAN
                        United States Magistrate Judge


Copies to:

Jan H. Brown, Esq.
1150 Avenue of the Americas
Suite 700
New York, NY 10036

Daniel P. Filor, Esq.
Assistant United States Attorney
86 Chambers Street
New York, NY 10007